## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THYRA LOWE,

      Plaintiff,

      v.

DISTRICT OF COLUMBIA,

      Defendant.

RECEIVED
Civil Clerk's Office
OCT 1 4 2005
Superior Court of the
District of Columbia
Washington, D.C.

C. A. No. _____05—0008269_____
(Jury Trial Requested)

## COMPLAINT OF UNLAWFUL EMPLOYMENT RETALIATION

### INTRODUCTORY STATEMENT

Plaintiff Thyra Lowe, by and through undersigned Counsel hereby files this complaint for money damages and other relief for violations of her Constitutional rights under the First Amendment, actionable under 42 U.S.C. 1983, and for violations of the District of Columbia Whistleblower Reinforcement Act, DC Code §1-615.51 *et seq.*, by the defendant.

Plaintiff was unlawfully terminated when her position was "abolished" by her employer, the District of Columbia Department of Health (DOH), in retaliation for speaking out against violations of District of Columbia (DC) and federal regulations and laws, and for other protected activity disclosing waste, fraud, abuse and gross mismanagement.

Plaintiff seeks reinstatement, back pay, restoration of benefits, discipline against DC Department of Health management officials who took the illegal action against her, compensatory damages, attorney fees, and any other damages available and appropriate.

## I. PARTIES

1. **Plaintiff Thyra Lowe** is a resident of the District of Columbia and a citizen of the United States.

2. **Defendant District of Columbia** is a political subdivision of the Untied States of America. At all times material to this complaint, Defendant DC acted through it's agents, the senior managers at the DC DOH, who approved, ratified and adopted all acts and ommissions against plaintiff.

## II. GENERAL FACT AVERMENTS

3. Plaintiff Ms. Lowe holds a B.A. in Urban Planning and a Masters in Community and Regional Planning. She was the Deputy Administrator (Management Supervisory Service-14) of the Emergency Health and Medical Services Administration (EHMSA) of the Department of Health between November 2002 and November 2004. She also served as *de facto* Acting Administrator when that position was vacant.

4. While serving as Acting Administrator, Ms. Lowe had complete responsibility for the administration, staff and funding grants for EHMSA. She led the operational response to Hurricane Isabel, the Ballou Mercury Spill, the Bethesda Naval Center Anthrax Scare, Ricin on the Hill, and Lead in the Water. Under her tenure, EHMSA conceived and developed the Emergency Healthcare Reserve Corps, the only comprehensive healthcare corps in the nation. EHMSA completed the spending of the $20 million in U.S. Department of Defense Emergency Preparedness Funds. Under her guidance and supervision EHMSA wrote four federal bioterrorism preparedness grants and met the goals for the two previously awarded such grants.

-2-

5. When Ms. Lowe began working for EHMSA, Ms. Sherry Adams was the Administrator. On March 7, 2003, Dr. Michael Richardson, then the DOH Senior Deputy Director for Medical Affairs, removed Ms. Adams from her duties. Ms. Adams pursued her legal rights through a lawsuit alleging that DOH, Director James Buford, and Dr. Richardson violated her rights under the First Amendment, DCWPA and Title VII.

6. After Dr. Richardson removed Ms. Adams from her duties, he appointed a part-time replacement as the Administrator. This replacement was in the position until July 2003, at which point Ms. Lowe became the *de facto* Acting Administrator of EHMSA.

7. Although Ms. Lowe was the best-qualified person to assume the duties of Acting Administrator, she was three times passed over for the position, each time in favor of a less-qualified male. Ms. Adams raised this issue with the EEO office of DOH to show that discrimination against her was part of a larger pattern. The EEO office made the equivalent of a probable cause finding.

8. Also during 2003, Ms. Lowe voiced opposition to managements plan to move DOH staff members Deirdre Jordan, Interim Administrative Officer, Corey Palmer, Staff Assistant and Clarence Minor, Driver onto the payroll funded by federal bioterrorism grants she oversaw. Ms. Lowe explained to her surpervisors that this action would violatie the Public Health Service Act prohibition against using federal bioterrorism grant funds to supplant state and local funds. 42 U.S.C.A. ' 247d-6 (j).

-3-

9. In fact, in 2003 the Center for Disease Control directed DOH to remove Minor and Palmer from the grant. In defiance of CDC, these individuals remained on the grant at least until the day Ms. Lowe left EHMSA.

10. On March 10 and 11, 2003, Ms. Lowe sent a letter and two memoranda to Mr. Buford protesting removal of Ms. Adams. Numerous EHMSA staff members joined her in one memorandum.

11. On May 9 and May 29, 2003, Ms. Lowe signed declarations that lawyers for Ms. Adams filed in the public records of the United States District Court. Her declarations provided evidence that DOH had engaged in contract-steering and cronyism.

12. On February 26, 2004, the City Administrator appointed Dr. Thomas Calhoun as Acting Administrator of EHMSA, the third unqualified male appointed over Ms. Lowe. Dr. Calhoun was a former teacher and mentor of Dr. Richardson. At that same time, Dr. Dan Lucey was appointed Interim Chief Medical Officer of the Department of Health. Plaintiff alleges that at that time Calhoun and Lucey began efforts to fire or demote her, at the urging of Mr. Coleman and Ms. Davenport.

13. In March 2004, DOH settled Ms. Adams' case, paid her attorney's fees, and returned her to her duties with a promotion to EHMSA Assistant Senior Deputy Director.

14. During the following months Drs. Calhoun and Lucey continued to try to have Lowe

-4-

fired, poisoning her reputation in the eyes of other administrators, including Ms. Cheryl

Edwards, Chief of Staff, Ms. Monica Lamboy, Chief Operating Officer, and then Herb Tillery,

the replacement for Mr. Buford.

15. Throughout her time with EHMSA, Ms. Lowe was the program manager and

Bioterrorism Coordinator for federal funds paid to the District under what are know as

cooperative agreement grants between EHMSA, the federal Center for Disease Control and

Prevention (CDC) and the federal Health Resources Services Association (HRSA). Cooperative

agreement grants require the grantor (CDC or HRSA) to work with the grantee (EHMSA). The

grantor provides prescriptive guidance with objective standards. The state and local agency

writes the grant proposal following the guidance and adapting it for the needs of the particular

city or state. It is a violation of federal regulations and laws to spend funds outside of those

guidelines without an explicit waiver from the grantor. The state or local agency receiving the

funds is also required to convene, work with, and disperse funds to various "stakeholder" entities

such as health care provider, contractors and other local and regional governments.

16. As program manager, Ms. Lowe was responsibility for ensuring that DOH spent

funds properly. One DOH stakeholder group, the District of Columbia Hospital Association

(DCHA), continually pushed DOH for a larger share of money from the HRSA and CDC grants.

DCHA tried to persuade EHMSA to divert funds to uses not approved by the granting agencies.

EHMSA officials, other than Ms. Lowe, were compliant.

17. In one instance, in late June 2004, the President of DCHA pressured Interim Director

of Health Herb Tillery, Chief of Staff Cheryl Edwards, and Ms. Lowe to provide grant funds for

the entire $250,000 annual salary of the medical director of DCHA, Jeffrey Elting, M.D.

18. Ms. Lowe consulted HRSA for guidance. By electronic mail on June 25, 2004 and

June 29, 2004, HRSA instructed Ms. Lowe that funding the DCHA medical director was

improper, and wrote the grant without including the allocation for the DCHA Medical Chief's

salary.

19. On June 30, 2004, shortly before the grant application was due, Ms. Lowe was

abruptly summoned to a meeting with the DCHA President, Mr. Tillery, and Ms. Edwards. Ms.

Lowe was interrogated as to why the entire $250,000 was not allocated to DCHA. She explained

that she had received a ruling from HRSA that disaloowed the allocation.. Payment of DCHA

staff would count towards the administrative cap and EHMSA was already at the administrative

cap for personnel. Further, it would be inappropriate to pay for the salary of an organization that

actively lobbies DOH for funds under the same grant. Mr. Tillery and Ms. Edwards were not

satisfied with her response, and the HRSA grant official was called during the meeting. The

grant official confirmed what Ms. Lowe had told Mr. Tillery and Ms. Edwards.

20. After the June 30, 2004 meeting, the President of DCHA asserted that as a member

of a DOH sponsored Bioterrorism Committee, DCHA had veto power over DOH grant fund

allocation. By vetoing certain expenditures, DCHA proposed to make more money available for

its own use.

21. Ms. Lowe objected to this as abuse of authority and violation of the grant regulations and rules. She expressed her view to her supervisors at DOH, but was ignored.

22. On September 17, 2004, the Director of the District of Columbia Office of Boards and Commissions wrote that the Bioterrorism Committee was "purely advisory" and "does not currently have, nor was it intended to have the authority to review, veto, approve, or contravene final grants submissions of the District government to whatever source." Proving Ms. Lowe to be correct in her objection to the plan to veto DOH allocations involving federal grant funds.

23. In late September of 2004, Ms. Lamboy, the DOH Chief Operating Officer, proposed to violate the Public Health Service Act prohibition against using federal bioterrorism funds to supplant state and local funds. 42 U.S.C.A. § 247d-6 (j). Ms. Lamboy proposed a RIF followed by movement of displaced staff from local funds to bioterrorism funds, even though these staff members' positions were not in support of bioterrorism preparedness.

24. Ms. Lowe opposed this proposal, and mde her view know to Ms. Lamboy. Ms. Lamboy ignored Ms. Lowe's advice and subsequently kept several positions on the grant without approval from the CDC. This action was clearly and directly in violation of the federal grant regulations and rules.

25. Less than a month later, Ms. Lowe was abruptly informed of the abolishment of her position. The notice is dated October 15, 2004 effective November 15, 2004. The notice letter

stated that the removal comes "as a result of the Department's restructuring." Although the notice letter stated that Ms. Lowe may be eligible for severance pay she has not received any.

26. Ms. Lowe is the only EHMSA employee who lost her salary as a result of this supposed restructuring. Dr. Calhoun was "removed" at the same time, but DOH reappointed him to the Addiction Prevention and Recovery Administration (APRA).

27. DOH replaced Dr. Calhoun and Ms. Lowe with Roderick Blair and Andrew Brave, respectively. Before assuming responsibility for public health emergencies in the nation's capital, Mr. Blair worked as a caterer and restauranteur in the District of Columbia at the Heart and Soul Café. Neither Mr. Blair nor Mr. Brave had any job experience or education in EMS management, public health, public health emergency response, personnel management, bioterrorism preparedness, strategic planning or grants management. Neither met the requirements of the job as outlined in 2002 for either the Deputy Administrator, Bioterrorism Coordinator, Administrator nor the Senior Deputy Director. Mr. Brave has already left EHMSA.

28. The day after DOH notified Ms. Lowe of her termination, DOH hired Dr. Elting as Medical Director for EHMSA, a position he held concurrent with his duties at DCHA. These dual roles presented an obvious conflict of interest, which the CDC stated in a written objection to the hiring. Dr. Elting has since left DOH and returned to DCHA. The timing of his hiring by DOH conclusively demonstrates that DOH terminated Ms. Lowe because of her opposition to improper expenditure of grant funds for Dr. Elting.

-8-

## III.  CLAIMS FOR RELIEF

Count 1.  Violations of the DC Whistleblower Reinforcement Act

29.  Plaintiff realleges paragraphs numbered 1-28 above.


30.  The plaintiff's activity outlined in the paragraphs above constitute protected activity

under the DC Whistleblower Reinforcement Act (DCWRA), DC Code 1-615.52.


31.  An illegal order means a directive to violate or to assist in violating a federal, state or

local law, rule, or regulation.  DCWRA ' 1-615.52, Definitions.


32.  A protected disclosure means any disclosure of information, not specifically

prohibited by statute, by an employee to a supervisor or a public body that the employee

reasonably believes evidences either gross mismanagement, gross misuse or waste of public

resources or funds; abuse of authority in connection with the administration of a public program

or the execution of a public contract; a violation of a federal, state, or local law, rule, or

regulation, or of a term of a contract between the District government and a District government

contractor which is not of a merely technical or minimal nature;  or a substantial and specific

danger to the public health and safety.  DCWRA § 1-615.52, Definitions.


33.  Ms. Lowe refused to comply with several illegal orders.  The orders to direct

additional funds to DCHA and to use federal grant funds to supplant local funds violated federal

laws.  Ms. Lowe refused to follow those orders and notified grant-issuing authorities, which are

public bodies under the statute.  Ms. Lowe refused to comply with several illegal orders.  The

orders to direct additional funds to DCHA and to use federal grant funds to supplant local funds violated federal laws. Ms. Lowe refused to follow those orders and notified grant-issuing authorities, which are public bodies under the statute. DCWRA § 1-615.52, Definitions.

34. The DCWPA prohibits personnel action and other retaliation against an employee because of the employee's protected disclosure or refusal to comply with an illegal order. DCWPA ' 1-615.53, Prohibitions.

35. Abolishment of Ms. Lowe's position was a pretext for wrongful and illegal retaliation. Her job position clearly stated that she was the Bioterrorism Coordinator, a position that can not be abolished under the grant guidance for both the CDC and HRSA grants. The position was changed in name only to Chief of Staff. The requirements of the position did not change.

Count 2.  Depravation of Constitutional and Civil Rights

36. Plaintiff realleges paragraphs 1-35 above.

37. Communications the Plaintiff made, in expressing the referenced dissent to the appropriate government officials were matters of substantial Public Concern and constituted protected speech under the First Amendment of the United States Constitution.

38. Under title 42, USCA 1983, Plaintiff is entitled to a private right of action to recover damages against Defendant District of Columbia.

-10-

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief be granted for both Counts above:

1. Reinstatement, with full back pay and benefits to the Chief of Staff position at the DOH, EHMSA;

2. Compensatory damages for injury to the Pliantiff, including but not limited to injury to her professional reputation and standing, mental health and well being, Physical health and well being, career and income potential and civil rights;

3. An order directing the District of Columbia to take appropriate disciplinary action against District Officials found to have violated DC Code 1-615.53, as provided in DC Code 1-615.55;

4. All other relief which law and equity may provide , including the costs, expenses and disbursements necessary to pursue this action and reasonable attorney fees under DC Code 1-615.54 and 42 USC 1983.

## JURY DEMAND

Plaintiff request a trail by jury for all issues so triable.

Respectfully Submitted:

F. Douglas Hartnett
Elitok and Hartnett at Law, L.L.C.
2428 Wisconsin Avenue, NW
Washington, DC 20007
(202) 965-0529 / (202) 965 0530 (fax)

Counsel for Plaintiff

# CERTIFICATE OF SERVICE

I, Doug Hartnett do hereby swear and affirm that I have placed in the U.S. Mail, postage paid a copy of the forgoing Complaint aganst the District of Columbia addressed to the following:

Mayor Anthony Williams
District of Columbia
1300 Pennsylvania Avenue, NW
Washington DC 20001

District of Columbia Attorney General
441 - 4th Street, NW - 6th floor
Washington, DC 20001

Signed: _____    Date: _Oct. 14, 2005_