# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THRYA LOWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-0002205 (HHK) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant District of Columbia, by and through undersigned counsel, moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Assuming that all of Plaintiff's factual allegations are true, Plaintiff has not alleged a violation either of the District of Columbia Whistleblower Protection Act, D.C. Official Code § 1-615.51 *et seq.*, or her constitutional rights. In addition, all of the individual defendants are entitled to qualified immunity. A memorandum of points and authorities in support of this motion and a proposed Order granting it accompany this motion. Because this is a dispositive motion, LCvR 7.1(m) does not require consultation with Plaintiff before filing.

For the foregoing reasons and such others as may appear to the Court, Defendant respectfully requests that the Court grant the relief requested herein.

Dated: July 25, 2006                    Respectfully submitted,

                                        ROBERT J. SPAGNOLETTI
                                        Attorney General for the District of Columbia

                                        GEORGE  C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division


                                        _____
                                        KIMBERLY MATTHEWS JOHNSON
                                        Chief, General Litigation I
                                        D.C. Bar No. 435163



                                        _____
                                        WENDEL V. HALL
                                        Assistant Attorney General
                                        D.C. Bar No. 439344
                                        Suite 6S012
                                        441 4th Street, N.W.
                                        Washington, D.C.  20001
                                        (202) 724-6608
                                        (202) 727-0431 (fax)
                                        E-mail: wendel.hall@dc.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THRYA LOWE, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-0002205 (HHK) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### I.    INTRODUCTION

Plaintiff was employed in the District of Columbia Department of Health ("DOH"). Plaintiff's services were not retained when the DOH reorganized each of its organizational units. Plaintiff is now asking this Court to reverse the decision of her supervisors that, after the reorganization, no position that fit her knowledge, skills, and abilities remained.  Plaintiff bases her claim for continued employment upon both the D.C. Whistleblower Protection Act, D.C. 1-615.51 *et seq.* ("WPA"), and 42 U.S.C. § 1983.  Plaintiff, however, fails to state a claim under either law and the Amended Complaint should be dismissed.

### II.    STATEMENT OF FACTS

For the purposes of this motion, the facts as Plaintiff alleges them are assumed to be true. Plaintiff worked for the Department of Health in an organization unit named Emergency Health and Medical Services Administration ("EHMSA"). During Plaintiff's tenure at EHMSA, the top

management position became available.  Although Plaintiff evaluated herself to be the best-qualified person for the job, Plaintiff was not selected.  In 2003, according to Plaintiff, she learned of an alleged plan to fund certain employees' pay through a bioterrorism grant.  In Plaintiff's opinion, it was inappropriate to do so and she explained her viewpoint to "management."  DOH management, however, did not agree with Plaintiff's legal analysis and went ahead with the plan despite her opinion.

As new administrators came to DOH, Plaintiff came to believe that her direct supervisors were "poisoning her reputation" in the eyes of more senior administrators.  Plaintiff, however, does not allege that the incidents upon which the allegedly damaged reputation were untrue.  Plaintiff later had another disagreement with others in DOH about the disbursement of funds under a cooperative agreement involving the District of Columbia Hospital Association.  Plaintiff's view did not prevail and, as a result, Plaintiff alleges that she was ignored.  Finally, Plaintiff disagreed with another staffing and funding decision of DOH management.  Plaintiff provided her "advice" on the situation, but management made a different decision.  Meanwhile, the reorganization of the DOH continued and Plaintiff was informed that the position that she occupied was going to be abolished.  Plaintiff thereafter filed the instant lawsuit.

### III.    ARGUMENT

A.    <u>Standard Of Review</u>.

The standards for considering a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) are well-established.  In a recent employment discrimination case, the court explained the governing law succinctly:

> A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. "Such simplified notice pleading is made possible by the liberal opportunity for

discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues. It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint or "plead law or match facts to every element of a legal theory.

Runkle v. Gonzales, 391 F. Supp. 2d 210, 220 (D.D.C. 2005)(citations and internal punctuation omitted.)

A.    Plaintiff Has Failed To State A Claim Under The D.C. Whistleblower Protection Act.

The WPA prohibits a supervisor from taking a prohibited personnel action "because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Official Code § 1-615.53. Taking Plaintiff's allegations as true and giving her the benefit of all reasonable doubts, it is clear that Plaintiff has not alleged that she was subject to a prohibited personnel action, D.C. Official Code § 1-615.53, because of her refusal to obey an illegal order or because she made a protected disclosure. Zirkle v. District of Columbia, 830 A.2d 1250, 1258 (D.C. 2003).

Under the WPA, an "illegal order" is "a directive to violate or to assist in violating a federal, state or local law, rule, or regulation." D.C. Official Code § 1-615.52(a)(4). Plaintiff asserts that what she views as the unlawful funding of staff positions, contrary to her personal opinion, are illegal orders under the statute. This analysis is incorrect. First, Plaintiff does not allege that any official of DOH directed her to fund the positions or that she performed the allegedly unlawful acts. Instead, she clearly alleges that the funding of these positions was management's plan, and that she provided "advice" in connection with the "plan." Plaintiff does not allege that she took the relevant action but, rather, that despite her opinions, a senior management official kept several positions on the grant. What Plaintiff alleges is not that she

was directed to violate the law and refused but that her supervisors took certain actions with which Plaintiff disagreed.

Nor did Plaintiff make a "protected disclosure" under the WPA. The WPA defines "protected disclosure" as:

> [a]ny disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
>
> . . .
>
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or

D.C. Official Code § 1-615.52(a)(6). In this case, Plaintiff focuses on § 1-615.52(a)(6)(D) and claims that she disclosed a violation of federal law, rule, or regulation "which is not of a merely technical or minimal nature." Plaintiff fails to make sufficient allegations to support her claim that she made a protected disclosure.

The reason that Plaintiff's Complaint fails in this regard is that all of the alleged disclosures are about prospective conduct, not the retrospectively unlawful or inappropriate conduct that the Council intended. The WPA is to be interpreted in accordance with its plain language and the Court is to follow the most obvious reading of the statute. Crawford v. District of Columbia, 2006 D.C. App. 15, * 7 & * 7 n. 6. In this instance, the Council defined "protected disclosure" as information that evidences certain specified types of wrongdoing. D.C. Official Code § 1-615.52(a)(6). The Council further limited the scope of a protected disclosure to such information that an employee "reasonably believes" evidences the specified wrongdoing.

The most natural reading of the categories identified by the Council is a retrospective one. "Gross mismanagement" suggests that a manager has taken some action that is grossly

incompetent.  It does not suggest that a manager might be considering taken an action that an employee might choose to characterize as mismanagement.  The same is true for the "gross misuse or waste of public funds."  It is impossible to determine whether funds were misused or wasted until the funds have been spent.  "Abuse of authority in connection with the administration" of a public program suggests abusive decisions have been made.  If the authority has not yet been exercised, it cannot be abused.  As for violations of law, one cannot disclose a violation of the law unless the law has been violated (or an action has been taken that an employee reasonably believes violates the law).  The same is true for public safety issues.  In short, the most natural reading of the statute is retrospective:  protected disclosures include disclosures of information about actions that have already taken place.

The conclusion that follows from the most natural reading of the statute is reinforced by the policy underlying the statute.  The Council did not intend the WPA to become a sword in the hands of employees for use in policy discussions. <u>Zirkle v. District of Columbia</u>, 830 A.2d 1250, 1260 (D.C. 2003).  This understanding clearly animates the District of Columbia Court of Appeals' discussion of the test for determining whether a protected disclosure exists:

> To determine whether his belief was reasonable, the proper test is as follows:
>
> Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [illegality]? A purely subjective perspective of an employee is not sufficient even if shared by other employees. The WPA is not a weapon in arguments over policy or a shield for insubordinate conduct.

<u>Id.</u>  Implicit in the Court of Appeals' discussion is that the essential facts have occurred or else they could not be known or be "readily ascertainable" by the employee.  Nor could mere policy proposals "evidence illegality" since they may never ripen into government action.  Finally, any policy discussion about what action should be taken can be framed in terms of one of the

categories of protected disclosures (e.g., "if the agency does that, I believe that it would be 'gross mismanagement.'")  Not only would the WPA become a "weapon in arguments over policy," it would become a weapon deployed in the most sensitive phases of policy about proposals that may never come to fruition.

A review of Plaintiff's Complaint indicates that each alleged disclosure was made in the context of prospective agency decision making and did not involve information that "evidenc[ed]" any of the specified wrongdoing.  See Complaint, ¶¶ 8, 18, 23.  In short, Plaintiff did not make a protected disclosure under the WPA.  Because she neither made a protected disclosure or was directed to obey an illegal order, Plaintiff has failed to state a prima facie claim under the WPA.

     C.     <u>Plaintiff Has Failed To State A Claim Under The First Amendment</u>.

Plaintiff attempts to state a claim against the District of Columbia under 42 U.S.C. § 1983 for alleged retaliation under the First Amendment.  Plaintiff fails to state a claim on this theory as well.  First, Plaintiff does not allege that the District of Columbia has a policy of retaliating against employees for activity protected under the First Amendment.   Second, under the Supreme Court's decision in <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951 (2006), Plaintiff fails to allege a sufficient substantive basis to conclude that her speech was protected under the First Amendment.

To prevail under 42 U.S.C. § 1983, Plaintiff must show "a violation of a right secured by the Constitution or by federal law, and (2) that the deprivation was committed by a person acting under the color of state law."  <u>Brown v. District of Columbia</u>, 2003 U.S. Dist. Lexis 3570, *31-*32 (D.D.C. March 11, 2003)(Robinson, M.J.), <u>citing</u> <u>Gabriel v. Corrections Corp. of America</u>, 211 F. Supp. 2d 132 (D.D.C. 2002).  When a municipality is the named defendant, a plaintiff

must show that the deprivation occurred because of a municipal policy or custom so that the municipality is the moving force behind the violation. Baker v. District of Columbia, 2003 U.S. App. LEXIS 8452, *12 (D.C. Cir. May 2, 2003). As the Supreme Court recently explained:

> Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

Bd. of County Commrs. v. Brown, 520 U.S. 397, 403-04 (1997). Unless Plaintiff clearly shows that the alleged constitutional deprivation occurred because of a Government policy, she can obtain none of the relief she seeks. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978)("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers.").

The standard for analyzing claims of First Amendment retaliation is well established. First, a plaintiff must show that he or she was speaking "as a citizen," Connick v. Myers, 461 U.S. 138, 142 (1983), and "on a matter of public concern." O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998). There are two threshold inquiries. First, the plaintiff must show that she was speaking "as a citizen," Connick v. Myers, 461 U.S. 138, 142 (1983), and not merely in connection with her duties as an employee. If an employee's speech is job-related, it is as a matter of law, not "as a citizen" on a matter of public concern. Garcetti v. Ceballos, 126 S. Ct. 1951 (2006). Next, the plaintiff must show that specific instances of protected speech were "a substantial or motivating factor in prompting the retaliatory or punitive act of which she complains." O'Donnell, 148 F.3d at 1133.

Finally, the government must be given an opportunity to show that the same allegedly retaliatory action would have been taken regardless of the specific protected speech at issue. O'Donnell, 148 F.3d at 1133.  The First Amendment does not allow an employee to place himself or herself "in a better position as a result of protected conduct than he would have occupied had he done nothing."  Mt. Healthy School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977).

Plaintiff has failed to allege an actionable violation of her First Amendment rights because she did not speak out as a citizen, but rather as an employee. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[.]"Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).  As a result, Plaintiff never reaches the balancing test articulated by the Supreme Court in Connick v. Myers, 461 U.S. 138, 142 (1983), and Pickering v. Board of Educ., 391 U.S. 63 (1968).

The circumstances that the Supreme Court considered in Garcetti are almost directly analogous to those before the Court. In Garcetti, an attorney, Richard Ceballos, in the Los Angeles County Attorney's Office, wrote a memorandum criticizing Los Angeles County detectives and refused to revise it as his supervisors directed.  In doing so, he was advocating for his opinion of the proper, legally-required response to the detectives' action.  The County disciplined him for his statements.  When the matter was presented to the Supreme Court, the Court ruled that his statements were not "as a citizen speaking on a matter of public concern" because they were "pursuant to" his job duties, even though they were inappropriate and subject to discipline.  Garcetti leads to the same result here.

The incidents of speech that Plaintiff alleges as the basis for the purported retaliation are clearly job related.  See Amended Complaint, ¶ 12 (memorandum to Director regarding office

organization and allocation of responsibilities); ¶ 17 (disagreement with proposed grant recipient for activities within her Administration); ¶¶ 24-26 (grant funding concerns involving grant as to which Plaintiff allegedly was Program Manager); and ¶¶33-45 (grant funding concerns within her purview as Program Manager). The Supreme Court's holding in Garcetti that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes," Garcetti, 126 S. Ct. at 1960, means that Plaintiff on the face of her complaint cannot state a claim for a violation of the First Amendment.

Moreover, to hold the District liable, Plaintiff must allege that a policy adopted by District officials with final policymaking authority caused the alleged constitutional violation. St. Louis v. Praprotnik, 485 U.S. 112, 126-27, 130 (1988)(plurality); Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). A municipal government cannot be held liable simply because its employees misuse discretionary authority, i.e., there is no respondeat superior liability. Monell, 436 U.S. at 694; see also Praprotnik, 485 U.S. at 130 (1988). Municipal governments are to "be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." Praprotnik, 485 U.S. at 122. Because only official policies/customs lead to municipal liability, "[o]nly those municipal officials who have 'final policymaking authority' may be their actions subject the government to § 1983 liability," Praprotnik, 485 U.S. at 123.

In this case, Plaintiff alleges that the District is liable for the actions of DOH managers and not because of its own actions. Instead, Plaintiff explicitly alleges that it was the allegedly wrongful use of discretionary authority that establishes the District's liability. Complaint, ¶ 2 (unnamed senior managers "approved, ratified, and adopted" actions against Plaintiff). The Supreme Court has clearly stated that the misuse of supervisory authority (and it was not, in fact,

misused) cannot establish a basis for municipal liability under 42 U.S.C. § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 695 (1978).  Since the District's liability cannot be based on *respondeat superior*, Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff fails to state a claim for violation of the First Amendment under 42 U.S.C. § 1983.  She explicitly bases her claim on the alleged misuse of discretionary authority vested in management officials of the Department of Health.[1]  Municipal liability under 42 U.S.C. § 1983 cannot be based on such a theory.  Moreover, Plaintiff's internal, work-related speech advancing nothing more than her policy views and "advice," Complaint, ¶ 24, is not speech as a citizen on a matter of public concern.  Instead, it is merely the example of the give-and-take among management officials of a large government agency.  If such comments were sufficient to trigger First Amendment protection, then this Court would become the arbiter of last resort as to every strongly-felt policy difference between government supervisors and their subordinates.  Plaintiff's claim under 42 U.S.C. § 1983 should be dismissed.

C.    Plaintiff Has Not Stated A Claim Against The Individual Defendants.

1.    The Complaint Makes No Specific Allegations Against Director Gregory Payne, Chief of Staff Cheryl Edwards, And Chief Operating Officer Monica Lamboy.

The Court should dismiss the individual defendants.  Each defendant is entitled to fair notice of the claims against them.  Fed. R. Civ. P. 8(a).  Plaintiffs have failed to meet this standard with respect to these defendants.  Director Gregory Payne is not mentioned at all.  Chief of Staff Cheryl Edwards is mentioned only as having been present at certain meetings, but not as having taken any action.  Chief Operating Officer Monica Lamboy is mentioned only as a person who was the recipient of certain of Lowe's work-related communications.  None of these people

---

[1]    Defendant strongly denies that any misuse of such authority occurred.

are alleged to have taken any action against Ms. Lowe or to have allegedly taken any action that allegedly violated her rights.

With respect to Dr. Thomas Calhoun, Lowe does make several allegations. Amended Complaint, ¶ 37. However, she never alleges that he took official action that in some way violated her rights.  Neither Count I nor Count II identify who allegedly acted wrongfully.  They do not in any way implicate Dr. Calhoun (or the other individuals) in the wrongdoing.  The individuals should be dismissed because Plaintiff literally fails to state a claim against them.

2.      The District Of Columbia Whistleblower Protection Act Does Not Provide For Individual Supervisory Liability.

Plaintiff's claims against the individual defendants under the WPA should be dismissed as a matter of law because the WPA does not provide a cause of action against individual supervisors. Winder v. Erste, 2005 U.S. Dist. Lexis 5190, *20-*27 (Mar. 31, 2005 D.D.C.).  The WPA expressly provides a cause of action in the Superior Court of the District of Columbia against the District of Columbia Government,  D.C. Official Code § 1-615.53; Winder, 2005 U.S. Dist. Lexis at *20-*21.  It does not, however, provide such an express cause of action against a supervisor.  Winder, 2005 U.S. Dist. Lexis at *23.  The question, then, is whether the WPA can be construed to imply such a cause of action.  It cannot.

As the Winder court noted, "the ultimate issue is one of legislative intent[.]" Id. at *23. To resolve this question, the courts look to the "language of the statute, the statutory structure" and to other sources such as legislative history.  Id.   As the plaintiff, Lowe bears the burden of showing that the D.C. Council intended to authorize WPA suits against individual supervisors. Id. It did not. As the Winder Court reasoned:

> The structure of the statute strongly indicates that the right of action set forth in § 1-615.54 was intended to run only against the District – the pre-suit notice provision and evidentiary standards . . . apply only to the District.  Moreover, the

provisions governing disciplinary proceedings against supervisors indicate that the D.C. Council gave consideration to the remedies that should be available against supervisors, and resolved the issue as set forth in D.C. Official Code § 1-615.58(10) and (11).

<u>Winder</u>, 2005 U.S. Dist. Lexis at *24-25.  The only provision suggesting the possibility of a cause of action against supervisors – D.C. Official Code § 1-615.55(b) – provides little support and, in fact, strengthens the case against supervisory liability.  "However, the more reasonable reading of this provision [D.C. Official Code § 1-615.55(b)] is that it authorizes fines as part of the judicial relief available to the District in a judicial appeal from an OEA decision on a disciplinary action."  <u>Winder</u>, 2005 U.S. Dist. Lexis at *25.  The <u>Winder</u> court also noted that "the little legislative history that has been cited to the Court is consistent with the rejection of an implied cause of action.  The District quotes an excerpt from the legislative history as stating: 'the Committee rejects, however, the provision in the bill as introduced that would have made supervisors personally liable for damages, including punitive damages, flowing from their violation of whistleblower protections.'"  <u>Id.</u> at *26.  The language of the WPA, its statutory structure, and legislative history all point in the same direction:  individual supervisors cannot be personally liable for damages in a WPA action.  The Court should reach the same conclusion as the <u>Winder</u> court and rule that the WPA does not authorize an individual cause of action against individual supervisors.

       3.      The Individual Defendants Are Entitled To Qualified Immunity From Suit.

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The rationale for this defense is that the substantial social costs of such lawsuits – in terms of official diversion of energy from the public's business and timidity in protecting the public interest –

must be balanced against the social interest in enforcing civil rights.  The social costs are well-recognized.  As the United States Court of Appeals for the Eleventh Circuit explained:

> 'These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office.  Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching exercise of their duties.'

Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996)(internal citations omitted).  The costs that qualified immunity seeks to avoid are primarily *social*.  Each public official has a job to do and that job has been determined by the government's elected officials to be in the public interest. As Foy noted:  "When public officials do their jobs, it is a good thing.  Qualified immunity is a real world doctrine designed to allow local officials to act (without always erring on the side of caution) when action is required to discharge the duties of public office."  Foy, 94 F.3d at 1534 (internal citation omitted).

When deciding a qualified immunity motion, the court first considers whether the defendant public official violated the plaintiff's constitutional or statutory rights. This issue is judged in light of current law. If so, the court next asks whether the constitutional right at issue was so clearly established in light of the law at the time of the act in question that is was objectively unreasonable to act as the public official did. Wilson v. Layne, 526 U.S. 603, 609 (1999).  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).  Whether a right was clearly established that an official's conduct violated the Constitution is judged in light of the case law in the official's jurisdiction or, failing controlling law, in light of the existence (or not) of a strong consensus of persuasive authority. Saucier, 533 U.S. at 202; Wilson, 526 U.S. at 617.

Thus, "if the law did not clearly put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Saucier</u>, 533 U.S. at 202.

Plaintiff cannot overcome the qualified immunity defense. First, she does not allege that Director Payne, Ms. Edwards, or Ms. Lamboy took any specific action against her. In fact, the complaint never mentions Director Payne at all and mentions Ms. Edwards and Ms. Lamboy only in passing. Nor does the complaint allege that Dr. Calhoun took any action against plaintiff. Since Plaintiff does not even *allege* that the individual defendants took any specific job-related action against her, she cannot surmount even the first hurdle of the qualified immunity defense. Moreover, since Plaintiff's speech occurred pursuant to her job duties, there was no substantive violation of the First Amendment because she was not speaking out "as a citizen" on a matter of public concern.

The second inquiry in the qualified immunity analysis is whether the law clearly notified the public official involved that the alleged conduct was unlawful. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Assuming for the sake of argument that Plaintiff can demonstrate that she was speaking "as a citizen," whether Plaintiff's speech was protected – and it was not – is determined on a case-by-case basis using a balancing test under <u>Pickering v. Board of Educ</u>., 391 U.S. 563 (1968). Numerous courts, however, have recognized that when a balancing test is involved – and, in particular, balancing under <u>Pickering</u> – it is extremely difficult to show that a right was clearly established in the particularized sense needed for qualified immunity purposes. <u>DiMeglio v. Haines</u>, 45 F.3d 790 (4th Cir. 1995) ("Only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet

well-defined."); <u>Medina v. Denver</u>, 960 F.2d 1493 (10th Cir. 1992) ("In determining whether the law was clearly established, we bear in mind that allegations of constitutional violations that require courts to balance competing interest may make it more difficult to find the law 'clearly established' when assessing claims of qualified immunity."); <u>Borucki v. Ryan</u>, 827 F.2d 836, 848 (1st Cir. 1987) ("When the law requires a balancing of competing interest, . . . it may be unfair to charge an official with knowledge of the law in absence of a previously decided case with clearly analogous facts."); <u>Benson v. Allophin</u>, 786 F.2d 268, 276 (7th Cir.), <u>cert. denied</u> <u>Benson v. Allphin</u>, 479 U.S. 848 (1986).

It will not do to argue in conclusory terms that "retaliation" generally is unlawful and therefore "clearly established."   Such an argument begs the question – *what* constitutes 'retaliation' and whether the speech was protected in this *particular* circumstance. <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) ("It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.")  As the Supreme Court explained:

> [W]e emphasized in Anderson [v Creighton,] 'that the right the official is alleged
> to have violated must have been "clearly established" in a more particularized,
> and hence more relevant, sense: The contours of the right must be sufficiently
> clear that a reasonable official would understand that what he is doing violates
> that right.' The relevant, dispositive inquiry in determining whether a right is
> clearly established is whether it would be clear to a reasonable officer that his
> conduct was unlawful in the situation he confronted."

<u>Brosseau</u>, 543 U.S. at 198, <u>quoting</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (internal citations omitted).  Broad propositions embodying legal conclusions do not establish law in the sense required by the Supreme Court.

In short, the need for balancing is fatal to any claim that the law clearly established that the conduct described by Plaintiff violated the Constitution; in fact, as shown above, the law

actually would hold that the alleged conduct was lawful. It cannot be said that the law clearly put the individual defendants on notice that the alleged conduct was unlawful.

## IV.    CONCLUSION

In 2003-2004, Plaintiff experienced disappointments in connection with her career advancement. She had strong views and her supervisors sometimes disagreed with her. This lawsuit is an attempt to obtain a judicial imprimatur upon her policy views and to reverse the DOH's reorganization of EHMSA. As has been noted, such ordinary disagreements are not actionable legal wrongs:

> Discussion and even disagreement with supervisors over job-related activities is a normal part of most occupations. It is entirely ordinary for an employee to fairly and reasonably disagree with a supervisor who overturns the employee's decision. In complaining to his supervisors, Willis has done no more than voice his dissatisfaction with his superiors' decision.

Willis v. Dep't of Agriculture, 141 F.3d 1139, 1143 (Fed. Cir. 1998). Plaintiff, though, provides no basis in law for converting these disagreements into full-fledged statutory and constitutional wrongs. The WPA protects only refusals to obey illegal orders and certain disclosures that it deems to be "protected" and Plaintiff has properly alleged neither. Nor may Plaintiff base a claim of municipal liability under 42 U.S.C. § 1983 on the alleged misuse of discretionary authority by government officials or that the First Amendment was violated since all of the alleged speech was pursuant to her official duties. Plaintiff has not stated a claim upon which relief can be granted. Her complaint should be dismissed.

Dated: July 25, 2006                    Respectfully submitted,

                                        ROBERT J. SPAGNOLETTI
                                        Attorney General for the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division

/s/ Kimberly Johnson
KIMBERLY MATTHEWS JOHNSON
Chief, General Litigation I
D.C. Bar No. 435163


_/s/ Wendel Hall____
WENDEL V. HALL
Assistant Attorney General
D.C. Bar No. 439344
Suite 6S012
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6608
(202) 727-0431 (fax)
E-mail: wendel.hall@dc.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Motion to Dismiss for Failure to State a Claim, the memorandum of points and authorities in support, and a proposed Order were served upon Plaintiff's counsel of record through the Court's ECF/CM system on this 25th day of January 2006.

/s/ Wendel Hall_____
WENDEL HALL
Assistant Attorney General

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |     |                                    |
|------------------------------|-----|------------------------------------|
| THRYA LOWE,                  | )   |                                    |
|                              | )   |                                    |
|                              | )   |                                    |
|       Plaintiff,             | )   |                                    |
|                              | )   | Civil Action No. 05-0002205 (HHK)  |
| v.                           | )   |                                    |
|                              | )   |                                    |
|                              | )   |                                    |
|                              | )   |                                    |
| DISTRICT OF COLUMBIA,        | )   |                                    |
|                              | )   |                                    |
|                              | )   |                                    |
|       Defendant.             | )   |                                    |
|                              | )   |                                    |

## ORDER

Having considered Defendant's Motion to Dismiss for Failure to State A Claim, the memorandum of points and authorities in support, Plaintiff's Opposition, Defendant's Reply, and the entire record herein, it is, this _____ day of _____, 2006:

ORDERED:   that Defendant's Motion to Dismiss for Failure to State A Claim shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED:   that Plaintiff's Complaint shall be, and hereby is, DISMISSED.

_____
Henry H. Kennedy
United States District Judge

cc:

Wendel V. Hall, Esq.
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.   20001

F. Douglas Hartnett, Esq.
Elitok & Hartnett
2428 Wisconsin Avenue N.W.
Washington DC 20007