UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THRYA LOWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-00022505 (HHK) |
| | ) | Next-Scheduled Court Event: |
| DISTRICT OF COLUMBIA, | ) | Pretrial Status Conference |
| | ) | |
| *et. al.* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**I.   INTRODUCTION**

Plaintiff was employed at the District of Columbia Department of Health (DOH) as the Deputy Administrator of the Emergency Health Management System Administration (EHMSA) between November, 2002, and November, 2004. Plaintiff was terminated for her unwillingness to go along with distributions of grant monies that violated the terms and regulations of the federal sources from which the District received those grant monies. Plaintiff protested both internally and to outside sources regarding her supervisors' activities in violation of federal laws rules and regulations. To stifle the Plaintiff after she made protected disclosures and spoke out against these illegal activities in a manner protected by the First Amendment, Plaintiff's supervisors at the DC DOH effectuated a "reorganization" of the department in which Plaintiff served; Plaintiff's position was "abolished," though no other position within the department was

1

substantively changed. Plaintiff now sues the District of Columbia and her supervisors at the DC DOH under the D.C. Whistleblower Protection Act, D.C. §1-615.51 *et seq.* ("WPA"), and 42 U.S.C. §1983. Defendant has moved for dismissal of both claims; however, for the reasons stated herein, Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted improperly states the relevant facts and the controlling law and must, therefore, be denied.

## II.  SUMMARY OF FACTS

For purposes of this Response to Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted, the facts alleged in Plaintiff's Amended Complaint are to be taken as true. In response to Defendant's Motion to Dismiss, Plaintiff now re-alleges all facts contained in Plaintiff's Amended Complaint.

As stated above, Plaintiff Thyra Lowe was employed at the District of Columbia Department of Health (DOH) as the Deputy Administrator of the Emergency Health Management System Administration (EHMSA) between November, 2002, and November, 2004. As Defendant concedes, "the top management position at EHMSA became available" (Defendant's Motion to Dismiss for Failure to State a Claim, P. 3, ¶ 2) after Plaintiff Lowe's supervisor, Administrator Sherry Adams, was wrongfully terminated for her unwillingness to be compliant in certain policies of the DC DOH that she felt violated the law. The settlement documents resulting from Ms. Adams's lawsuit against the DC DOH for wrongful termination are believed to be confidential (Ms. Adams has, however, been rehired to the DC DOH and placed in a higher position within a separate branch of the agency), but the record in Ms.

Adams's case includes: (1) an affidavit by Plaintiff Lowe in which she states her belief that Ms. Adams was wrongfully terminated from DC DOH in retaliation for her positions on grant spending; and (2) a letter written by Plaintiff Lowe indicating the same to the supervisors at DC DOH who fired Ms. Adams.

    At the time that Plaintiff Lowe was hired to work at EHMSA, DC DOH had mismanaged general funds to the point that the agency was unable to pay the salaries of some persons in departments outside of EHMSA. DC DOH management, including Senior Deputy Director for Medical Affairs, Dr. Michael Richardson, therefore, decided to use bio-terrorism preparedness grant funds to pay those salaries, despite the fact that the salaries belonged to persons whose positions had nothing or little to do with bio-terrorism. Ms. Adams objected to this, and was terminated. At the time, DC DOH had no other means whatsoever to pay the salaries in question, so it proceeded to misspend EHMSA's federal bio-terrorism preparedness grants out of desperation.

    Upon Ms. Adams's termination, the duties of Acting Administrator fell to Plaintiff Lowe by default (she was next in the chain of management after Ms. Adams) as DC DOH and Dr. Richardson looked for a replacement Acting Administrator. Though Plaintiff Lowe was considered for the position, "Plaintiff was not selected" (Defendant's Motion to Dismiss for Failure to State a Claim, P. 4, ¶ 1) because Dr. Richardson and upper management at DC DOH knew that Plaintiff Lowe supported Ms. Adams's position that federal grants were being fraudulently used by the District.

    Plaintiff Lowe ended up retaining the day-to-day workload of Acting Administrator until the time of her termination (proving that she was at least *competent* to perform the job of Acting

3

Administrator) though she would never be given that title. Indeed, the title "Acting Administrator" was eventually bestowed upon Dr. Feesah Woldu, a crone of Dr. Richardson, because Dr. Richardson and DC DOH upper management knew that Dr. Woldu would willingly direct federal bio-terrorism grant funds towards the salaries of persons in other branches of the DC DOH (Dr. Woldu had long-standing personal relationships with both his hiring supervisors and some of the persons whose salaries were to be paid by the misappropriated grant monies).

Soon thereafter, Dr. Richardson stated his design to award former Mayor of the District of Columbia, Sharon Pratt-Kelly, an award of $250,000.00 in federal bio-terrorism grant funds to produce a report on DC's bio-terrorism preparedness. Plaintiff objected on the grounds that the former mayor had no expertise in the field of public health or bio-terrorism, and that the terms of the grant expressly precluded such an award. Plaintiff further accused her supervisor of misspending for political gain, and the battle lines were drawn.

In response to her supervisors' conduct, and prompted by her concern as a citizen, Ms. Lowe decided to contact the federal Center for Disease Control (CDC) and the federal Health Resources Services Administration (HRSA), the sources of the District's bio-terrorism preparedness money that was being misspent. Ms. Lowe informed the federal agencies of the violations.

On or around this time, Dr. Thomas Calhoun replaced Dr. Woldu as Acting Administrator of EHMSA. Dr. Calhoun was once Dr. Richardon's mentor in the private sector, and was one of Dr. Richardson's former professors. Dr. Calhoun had little or no experience in public health or emergency preparedness.

Shortly after his appointment as Acting Director, Dr. Calhoun began an effort to convince

his immediate supervisors that Plaintiff Lowe should not be employed by the DC DOH because she would not acquiesce in former and current managerial decisions to misuse grant monies. At this time, Dr. Calhoun attempted to further dilute federal bio-terrorism preparedness funds awarded to the District by earmarking money to the District of Columbia Hospital Association (DCHA), a private organization that employed many of Dr. Calhoun's associates from the private sector. The appropriations were approved, and Plaintiff Lowe again reported her supervisors' misconduct to the CDC and HRSA. Plaintiff Lowe further spoke to ranking management at the DCHA to urge them to reject the fraudulently allocated funds.[1] Plaintiff did so out of concern as a public citizen, and in contradiction to her duties as defined by her supervisors. Plaintiff even went so far as to secure written statements from the CDC and HRSA in support of her position that her supervisors had improperly mandated that she illegally allocate funds–conduct that her supervisors neither directed nor approved of, and conduct that was totally outside of the scope of her official duties as an employee of EHMSA. In response, officials from both the CDC and HRSA gave written and/or oral determinations that the District's spending of funds violated the terms of the grants.

Throughout her tenure at EHMSA, however, Plaintiff Lowe made disclosures directly to her supervisors concerning the illegality of the grant spending. Specifically, Plaintiff Lowe

---

[1] The DCHA had previously been awarded funds by EHMSA under federal bio-terrorism preparedness grants given to the District. Plaintiff Lowe did not object to *all* awards to the DCHA under the grants; however, under Dr. Calhoun, the allocations to the DCHA were increased and the new *amounts* awarded vastly exceeded the permissible allocations to this particular private organization, which Plaintiff reported. At one point during Plaintiff's tenure at EHMSA, management proposed to pay the entire $250,000.00 salary of the President of DCHA, Bob Malson, out of money given to the District of Columbia by the federal CDC; not surprisingly, Dr. Calhoun and President Malson were friends at the time this was proposed.

protested to her various immediate supervisors throughout the terms of her employment, and further made the following protected disclosures to supervisors concerning her position on the grant spending: (1) the objections to Drs. Richardson and Woldu as to allocating former Mayor Sharon Pratt Kelly $250,000.00 to prepare a report; (2) protests to proposed grant spending at a meeting with supervisors on or around June 30, 2004, just before the next round of EHMSA's grant applications were due to the CDC and HRSA; objections made contemporaneous to and concerning the payment HRSA President Malson's $250,000.000 salary out of the grants to all of her supervisors at the time; and emails to named Defendant and supervisor Monica Lamboy concerning all of the above, dating from Summer, 2004.

In or around September, 2004, Plaintiff Lowe was asked by her supervisors to prepare and mount a program-panel on the District's bio-terrorism readiness (though Plaintiff Lowe was a burr in the side of her supervisors when it came to her personal belief that DC DOH was illegally spending federal monies, they also knew her to be extremely competent). Plaintiff Lowe did so, and was congratulated by her supervisors and the program-panel's contributors alike on the success of the event. Less than one month later, Plaintiff Lowe's position was abolished by a reorganization of EHMSA that had no substantive effect on any EHMSA employee besides Plaintiff Lowe.

### III.  ARGUMENT

A.  <u>Standard of Review</u>

Plaintiff submits that the standard of review on Defendant's Motion to Dismiss for Failure to State Claim is that submitted to this Court by Defendant, and adds only that this Court

must accept as true all reasonable allegations of fact in the Amended Complaint. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

B.      Plaintiff has Stated a Colorable Claim under the D.C. Whistleblower Protection Act:

Contrary to Defendants assertion in its Motion to Dismiss, Plaintiff has indeed stated a claim under the DC Whistleblower Reinforcement Act[2]. Defendants analyze whether Plaintiff has alleged sufficient facts to allege that she engaged in either of the two separate categories of protected activity under the statute and come to some remarkable conclusions. We ask the Court to reject them entirely.

       1. Plaintiff has Pled Facts Sufficient to Allege that She
          Refused to Follow and Illegal Order

Defendants first try to minimize plaintiff's conduct in resisting repeated attempts by managers to gain her cooperation in the misuse federal funds the DOH received under several grants which the plaintiff administered as part of her responsibilities. Defendants simply ignore, and ask the Court to ignore as well, the facts pled in paragraphs 14, 24, 26, 33, 38, 43 and 44 of the complaint.

In paragraph 14 Plaintiff states, "Under Ms. Lowe's guidance and supervision EMHSA completed spending $20 million in U.S. Department of Defense Emergency Preparedness Funds, wrote four (4) federal bio-terrorism preparedness grants and met the goals for two previously

---

[2] Defendant refers throughout its brief to the "DC Whistleblower Protection Act." The legislation enacted by the Council in 1998, which extensively amended the existing whistleblower protection law was in fact given the short title "Whistleblower Reinforcement Emergency Amendment Act." DC ST§ 1-615.51

awarded grants." Amended Complaint, p. 5. She thereby alleges that she was involved in the writing and administration of the grants relevant to this complaint.

In paragraph 24 Plaintiff alleges that she learned of her supervisor's plans to shift personnel expenses from DC appropriated funds to those provided by the federal agencies. Plaintiff explained to her supervisors that his would violate the terms of the grants and a specific statute, 42 U.S.C. § 247d-6(j). Amended Complaint, p.8.  In paragraph 26 Plaintiff recounts calling the CDC to report that several EMSHA employees were being shifted to "direct payee" status under the CDC grant. Amended Complaint, p. 9.  In paragraph 33, Plaintiff again resists her supervisors efforts to violate the regulations governing and terms of the HRSA and CDC grants by improperly channeling funds to the DCHA. Amended Complaint, p.11.

In paragraph 38 Plaintiff recounts being summoned to her supervisors office on July 30, 2004 shortly before the deadline for submission of the grants she was working on, and asked why the entire $250,00 amount her managers has directed was not allocated to DCHA. Amended Complaint, p.12.  She explained that she had checked with the granting agencies and they had informed her that such an allocation was improper.  Her supervisors were not satisfied, so the HRSA grant official was called during the meeting and confirmed Plaintiff's position.

In paragraph 44 Plaintiff alleges at least seven separate emails protesting yet another attempt by her managers to violate the rules regarding the grants she worked directly on in her position as Deputy Administrator of EMSHA. Amended Complaint p.14.   Despite her protests, she alleges, her managers kept several employees "on the grant without CDC approval." Amended Complaint, p. 14.

Defendants urge this court to rule, despite these specific allegations recounted above, and

without any discovery to further flesh out the details of these allegations, that because Plaintiff does not cite a specific direct order for her to take an action violating a law rule or regulation that she then specifically refused, that her allegations could not possibly lead a reasonable fact-finder to conclude that she refused to "assist" in violating a federal state or local law rule or regulation. Infact her allegations go significantly farther than the characterization by defendant that she gave her supervisors "advice." Def. Mot. p. 5.  On more than one occasion she reported her managers' conduct to the federal officials responsible for overseeing the grants in question, (paragraphs 26, 36, 38 and 41), and as reflected in paragraph 38, refused to comply with her supervisors apparent instruction (although it is not clear who they instructed) that the entire salary of the DCHA President be funded through the HRSA grant.

    The interpretation of the statutory provision regarding refusing an illegal order urged by the Defendants is so narrow as to be absurd. It is possible, as here, that an employee's conduct in consistently protesting and reporting what she believes to be violations of law rule or regulation that she is in fact, "refusing to comply with an illegal order," even if she is never specifically ordered to take any action herself.[3] Defendant's simply gloss over the definition they themselves cite, which includes an order to "assist in violating" a statute or regulation. DC Official Code 1-615.52(a)(4). Because of her position and responsibilities, even if plaintiff knowingly and repeatedly remained silent and acquiesced in managements plans to violate the

---

[3] We note here that Plaintiff does not admit that she was never directly ordered to violate the a law rule or regulation and refused, in fact, we contend that the order to include the entire $250,000 amount for the DCHA executive alleged in paragraph 38 was just such an illegal order and that Plaintiff refused to follow it. Her managers' conduct in summoning her to their office to answer for it not being included certainly implies that they believed she was responsible for their instructions not being carried out.

9

federal grant regulations, it certainly could have constituted "assisting" in the wrongdoing, but she refused.

These statutory interpretations questions are for another day, however, Here it is sufficient to say that the strict construction urged by the Defendants in order to urge this court to find that the defendant has failed to state a claim that she refused an illegal order makes a mockery of this Court's notice pleading under Rule 12(b)(6). As defendant's state themselves, "It is not necessary for the Plaintiff to plead all elements of his prima facie case in the complaint or plead law or match facts to every element of a legal theory. Runkle v. Gonzales, 391 F.Supp2d 210, 220 (D.D.C. 2005) (citations and internal punctuation omitted.)

    2. Plaintiff has Pled Facts Sufficient to Allege that She Made Protected Disclosures

Defendants next argue an even more bizarre interpretation of the DC Whistleblower Protection laws in an attempt to leverage a dismissal for failure to state a claim. The urge the Court to interpret the protections of the statute to be limited to reporting misconduct that has already occurred. This is a remarkable reading of the statute that is simply unsupported, and flies in the face of the public policy goals it is intended to promote. In effect, the Defendant's would require an employee who witnesses plans, proposals or acts in preparation of fraud, waste, abuse of authority, gross mismanagement to wait, sitting on their hands, until after the acts occur in order to be protected by the statute for reporting them. In support of this stunning interpretation they point to *Zirkle v. District of Columbia*, 830 A.2d 1250. They interpret language in that decision stating that "The Council did not intend the WPA to become a sword in

the hands of employees for use in policy discussions" (Id. At 1260) as broadly as humanly possible, extending it to mean that if an act has not occurred, an employee could not possibly have a reasonable belief that it would constitute the proscribed wrongdoing.

In fact, Zirkle was an appeal of the denial of a preliminary injunction. The facts involved conduct that had occurred and was ongoing. The Court focused on the issue of whether the employee reasonably believed it was illegal, followed by a brief analysis of whether the employer would be able to establish clear and convincing evidence that it would have taken the same action in the absense of the disclosures, and finally whether he had a substantial liklihood of prevailing in the underlying suit. There was no discussion whatsoever about whether an employee would or would not be covered for disclosing prospective behavior. Defendants are creating whole cloth in making this argument.

Thankfully, as with the interpretation urged for the illegal order provision, the Court need not address this strained reading of the statute because, contrary to the Defendant's assertions, the violations Plaintiff protested did in fact come to pass in more than one instance, and she continued to protest the same type of violations before during and after management planned and initiated them in various different incidents. As noted in paragraph 26, Plaintiff made disclosures to the CDC that resulted in an order to the DC DOH that at least two employees be removed from the roster of employees paid by the federal grant. Amended Complaint p. 9. In at least this incident, the plan had gone into effect and the Plaintiff blew the whistle to the federal agency which then ordered the conduct cease.

In addition, Plaintiff clearly participated in and supported her colleague, Ms. Adams, whistleblower allegations. It has long been held at the federal level that those who support

others who engage in protected activity, as well as those who are perceived as having blown the whistle are also protected. See *Special Counsel v. Brown*, MSPR 133, 139 (1985) and *Schaeffer v. Dept. of Navy* 86 MSPR 606 at 617 (2000) respectively.

Even without fully addressing the strained interpretation the Defendants urge, their assertions and characterizations of the Plaintiffs Whistleblower Reinforcement Act claims are simply not accurate. Plaintiff has indeed pled facts sufficient to to state a claim undeer the statute.

C.  <u>Plaintiff has alleged a successful claim under the First Amendment to the United States Constitution and 42 U.S.C. §1983 because Plaintiff has alleged an unconstitutional policy of the government of the District of Columbia, which Plaintiff spoke against as a private citizen concerned for the general welfare</u>:

Defendant asserts that Plaintiff has failed to plead an actionable claim under the First Amendment because "Plaintiff does not allege that the District of Columbia has a policy of retaliating against employees for activity protected under the First Amendment." (Defendant's Motion to Dismiss for Failure to State a Claim, P. 8, ¶ 2)  Defendant incorrectly asserts that "Plaintiff must show a violation of a right secured by the Constitution or by federal law, and (2) (*sic.*) that the deprivation was committed by a person acting under the color of state law" to establish that the conduct giving rise to Plaintiff's First Amendment claim establishes a "policy." (Defendant's Motion to Dismiss for Failure to State a Claim, P. 8, ¶ 3) However, "An unconstitutional policy or custom or custom may be inferred from a single decision or act... [and] the isolated action must be taken by a municipal official with 'final policy making authority' in the relevant area of the city's business." *Rodriguez v. Furtado*, 771 F.Supp. 1245, 1257 (D. Mass. 1991)

In her Amended Complaint, Plaintiff asserts that the policies of the DC DOH violated guidelines for distributing grant monies and that her speech in protest of such policies is protected under the First Amendment. The named Defendants Gregory Payne, Monica Lamboy, Thomas Calhoun, and Cheryl Edwards had or have "final policy making authority" because these persons established the policies about which Plaintiff spoke under the protections of the First Amendment. Therefore, "the principle that even a single unlawful act may be attributable to a municipality if it was the act of an officer having final policymaking authority" applies to the instant case, and Defendant's argument should be rejected under the proper test for establishing a "municipal policy." *Kidwell v. District of Columbia*, 670 A.2d 349 (D.C. 1996). *See also, City of St. Louis v. Praprontik*, 485 U.S. 112, 127 (1988); Partee v. Metropolitan School Dist. of Washington Township, 954 F.2d 454, 456 (7th Cir. 1992).

"The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 126 U.S. ____ (2006) (Slip Opinion at page 5) In Defendant's Motion to Dismiss for Failure to State a Claim, Defendant asserts that Lowe spoke not as a private citizen, but rather pursuant to her duties under the terms of her employment with the District of Columbia, and therefore has no private cause of action under the First Amendment.

"*Pickering* and the cases decided in its wake... [require] determining whether the employee spoke as a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises." *Id.* (Slip Opinion at page 6), citing *Connick v. Myers*, 461 U.S. 138 at 147 and *Pickering v. Board of Ed. Of Township High*

13

*School Dist.* at 568.  Because Plaintiff's protected statements were not part of her official duties, or made pursuant thereto, Plaintiff spoke as a private citizen on a matter of public concern when she attempted to disclose the fraudulent spending of bioterrorism preparedness grants as outlined above.

Defendant incorrectly recommends that the proper test to determine whether Plaintiff's speech is to be afforded First Amendment protection under the *Pickering* (*infra*.) line of cases to be whether the speech was "job related." (Defendant's Motion to Dismiss for Failure to State a Claim, P. 10, ¶ 4) In support of the Defendant's proposition that Plaintiff's speech does *not* support a First Amendment cause of action because the speech was "job related," Defendant cites *Garcetti* (*infra*.), the recent Supreme Court decision that precludes some First Amendment claims arising out of speech made within the scope of a government employee's duties, as controlling.

In *Garcetti*, the Court considered whether a supervising deputy district attorney had a cause of action under the First Amendment arising from his termination after writing a memorandum stating his belief that a faulty warrant required his office to drop charges against a criminal defendant, contrary to his supervisors' reasonable view that the warrant was sufficient. The Court held that Ceballos did not have a First Amendment cause of action for wrongful, retaliatory termination because he prepared the memorandum "pursuant to [his] official duties":

> The controlling factor in Caballos' case is that his expressions were made pursuant to his duties as a calendar deputy.  See Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor'").  That consideration–the fact that Ceballos spoke as a prosecutor *fulfilling a responsibility to a supervisor* about how best to proceed with a pending case–distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." (Slip Opinion at

14

page 9; emphasis added.)

The Court's holding in *Garcetti* applies only to First Amendment claims that arise out of speech made pursuant to one's official duties, defined by the Court as within a "responsibility to a supervisor" associated with the position of employment. Therefore, Defendant's assertion that Ms. Lowe's statements should not be afforded First Amendment protections because they are "job related" suggests to this Court application of a test that is overbroad given the limited holding in *Garcetti*.

Indeed, the Supreme Court rejected outright the application of such a broad test in *Garcetti*: The fact that "the memo concerned the subject matter of Ceballos' employment... is nondispositive" in determining whether the memorandum at issue was protected speech under the First Amendment (Slip Opinion at page 7). Rather, the Court ruled against Ceballos because Ceballos' job duties included writing the memorandum that Ceballos claimed was protected speech. In the instant case, Lowe made disclosures to the government agency from which her supervisors received funding, not *to her supervisors*; furthermore, those disclosures were not part of her official duties. Plaintiff, therefore, sharply disputes the Defendant's assertion that *Garcetti* renders her claim unviable under the First Amendment.

Plaintiff's case differs factually from *Garcetti* because the Plaintiff's inquiries to the CDC and HRSA were outside of the scope of her employment inasmuch as they were not "work product" (Slip Opinion at page10) made as part of her normally assigned duties. Rather, the disclosures were prompted by Ms. Lowe's personal concern as a citizen that the agency for which she worked was defrauding the federal government. It was not within the scope of Lowe's normal job function to uncover and report illegal appropriations by the District of

Columbia and subsequently report them to the federal agency supplying the money.  Lowe's claim is not factually analogous to Ceballos' because Lowe strayed from her normal job duties to report the District's misconduct, while Ceballos merely performed his normal, assigned duties.  The *Garcetti* Court simply refused to extend First Amendment protections to a memo written in the normal course of the plaintiff's job where the plaintiff was fired because the content of the memo proved contrary to his supervisor's reasonable, contrary perspective on a pending matter.  Though the subject matter of the memo in *Garcetti* was also the subject matter of his work, this was "nondispositive" in the Court's view.  Therefore, the *Garcetti* holding does not preclude First Amendment Protection to all "job related" speech, as the Defendant suggests.

The Court expressed two broad policy rationales for its holding in *Garcetti*: first, the need for managerial discretion in government to effectuate "proper performance of governmental functions" (Slip Opinion at page 7) and to "[promote] the efficiency of the public service it performs through its employees" (quoting *Pickering,* Slip Opinion at page 5); and, second, the necessary abstention of the courts from providing "permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with the sound principles of federalism and separation of powers."  The apposite ruling of this Court, consistent with these policy rationales, is a dismissal of the Agency's Motion to Dismiss because Lowe's claims are consistent with the policy rationales articulated in *Garcetti*:

> "When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences.  When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny.  To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and separation of powers." (Slip Opinion at page 11)

The *Garcetti* Court here expresses that the judiciary must not become the arbiter in disputes that are best resolved by managerial decision making. Efficiency in government is the value at issue, and the Court clearly states that government agencies are, to some extent, to be considered sovereign in their internal processes to the extent that such processes are carried out within the law and within the scope of reasonable managerial discretion.

Though it is not the role of this Court to second-guess the soundness of managerial decisions that are made within the scope of reasonable discretion, nor must this Court dismiss Plaintiff's First Amendment claim simply because the speech at issue was made *in response* to decisions made by DC DOH management. In *Garcetti*, unlike the facts before this Court, the plaintiff's supervisor took a position that was legally sound and squarely within his supervisory powers. Here, Plaintiff's supervisors were not acting within their range of discretion insofar as the appropriations of grant monies that they proposed and executed violated the legal constraints under which those monies had been given to the District. Plaintiff spoke in response to managerial decision making that violated the law. Therefore, Plaintiff does not here ask this Court to meddle in the normal processes of decision making that occur at the DC DOH; nor does Plaintiff urge this Court to consider whether the judgment exercised by her supervisors at DC DOH during Plaintiff's tenure was poor within any range of reasonable discretion. Rather, Plaintiff moves that her First Amendment claim stand only so that this Court may consider whether Plaintiff's speech is to be afforded First Amendment protection when it was made: (1) to report illegal conduct by her supervisors that could not possibly, as such, be made within the reasonable scope of discretion; and (2) in response to managerial directives to Plaintiff to aid in

defrauding the federal government.

## IV.  CONCLUSION

For the reasons stated above and for any other that the Court may consider, the Defendant's Motion to Dismiss for Failure to State a Claim must be denied.

Dated: August 28, 2006					Respectfully Submitted:


							/s/ F. Douglas Hartnett
							F. Douglas Hartnett
							Elitok and Hartnett at Law, L.L.C.
							2428 Wisconsin Avenue, NW
							Washington, DC 20007
							(202) 965-0529 / (202) 965 0530 (fax)

							Counsel for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THRYA LOWE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-00022505 (HHK) |
| ) | Next-Scheduled Court Event: |
| DISTRICT OF COLUMBIA, ) | Pretrial Status Conference |
| ) | |
| *et. al.* ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Having considered Plaintiff's Motion to Dismiss for Failure to State a Claim, the Memorandum of Points and Authorities in Support, the Plaintiff's Memorandum of Points and Authorities in Opposition, and the entire record herein, it is, on this ____ day of ____, 2006:

ORDERED: that Defendant's Motion To Dismiss shall be and hereby is,

DENIED

_____
Henry H. Kennedy
United States District Judge