## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THRYA LOWE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-0002205 (HHK) |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.        INTRODUCTION

The District of Columbia, Dr. Gregory Payne, Cheryl Edwards, Monica Lamboy, and Dr. Thomas Calhoun, respectfully request that the Court dismiss this action.  The Court should first dismiss the individual defendants. The Amended Complaint does not accuse any individual defendant of wrongdoing; it appears that the reason that the individuals are named defendants is that they happened to be Plaintiff Thyra Lowe's supervisors. Furthermore, the District of Columbia Whistleblower Protection Act, D.C. Official Code § 1-615.51 *et seq*. ("WPA"), does not provide for individual liability and the individuals are qualifiedly immune from Lowe's constitutional claims.  The Court should also dismiss the District of Columbia.  Lowe provided policy "advice," Amended Complaint, ¶ 44, to her supervisors, advice that her supervisors chose not to follow.   Such policy "advice" is not protected under the WPA nor under the First Amendment.

## II.    ARGUMENT

A.    <u>The Court Should Dismiss Defendants Dr. Gregory Payne, Cheryl Edwards, Monica Lamboy, And Dr. Calhoun Because Lowe Has Conceded Their Argument In Support Of Dismissal</u>.

"In general, when a party files an opposition to a dispositive motion and does not address all the arguments therein, the Court can consider 'those arguments the party failed to address conceded.'" <u>Glenn v. Williams</u>, 2006 U.S. Dist. LEXIS 8687 (D.D.C. 2006) (Kollar-Kotelly, J.), <u>quoting</u> <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 141 (D.D.C. 2003); <u>see also</u> <u>Stephenson v. Cox</u>, 223 F. Supp. 2d 119, 121 (D.D.C. 2002).

The individual defendants asked to be dismissed for three reasons.  The first was that the Amended Complaint does not provide fair notice to the individuals of the basis of a cause of action against them.  Fed. R. Civ. P. 8(a) requires that "a complaint . . . give the court and the defendant fair notice of the claim being asserted and the grounds upon which it rests, sufficient to identify the legal issues presented and prepare an adequate defense."  <u>Sebastian v. Wenzel</u>, 2004 U.S. Dist. LEXIS 6257, 1-2 (D.D.C. 2004).    Defendants argued that the Amended Complaint did not meet this standard.  Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, pp. 12-13 ("Memorandum").  Lowe did not respond and, under the rule enunciated in <u>Glenn</u>, has conceded that the Amended Complaint does not comply with Fed. R. Civ. P. 8(a).

The second reason that the individual defendants advanced was that the WPA does not provide a cause of action against individual supervisors.  <u>Winder v. Erste</u>, 2005 U.S. Dist. Lexis 5190, *20-*27 (D.D.C. Mar. 31, 2005). Memorandum, pp. 13-14.  The individual defendants asked this Court to follow the <u>Winder</u> Court's analysis.  Again, Lowe did not respond thereby

conceding that the WPA does not provide a cause of action against individual supervisors.  The WPA claims against the individuals should also be dismissed.

The final reason that the individuals defendants advanced for dismissal was that they were entitled to qualified immunity as to Lowe's First Amendment claims.  They argued that the doctrine of qualified immunity protects government officials from "liability for civil damages" if their conduct does not violate clearly established law.  The individuals then explained why it cannot be said that their actions violated clearly established law.  Memorandum, pp. 15-18.  Again, Lowe conceded the correctness of these arguments when she chose not to respond to them.  The Court should therefore dismiss the individual defendants from this lawsuit with prejudice.

> B.    The Court Should Dismiss The Claims Against Defendant District Of Columbia Since It Did Not Violate The Whistleblower Protection Act.

The District asked the Court to dismiss Lowe's WPA claim because her policy "advice," Complaint, ¶ 44, is not protected activity under the WPA.  It analyzed both of the operative statutory terms – refusing an "illegal order" and "protected disclosure" – and showed that Lowe's allegations fit neither category.  The District supported its analysis using the language of the statute, its purpose, authoritative judicial construction, and the allegations of the Amended Complaint.

Lowe responded that this analysis was "absurd" and "bizarre," Opposition, pp. 9-10, primarily because Lowe has no cause of action when the statute is read as intended.  Lowe's position is that by providing "advice" to her superiors, she refused "to assist in violating a federal, state or local law, rule or regulation." Lowe's analysis is flawed because it ignores the plain language of the statute.  Because Lowe does not allege that she received a "directive" to assist in violating the law, she did not "refuse to obey an illegal order."

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (internal quotation marks omitted). The District of Columbia Court of Appeals follows this principle. James Parreco & Son v. District of Columbia Rental Housing Comm'n., 567 A.2d 43, 45 (D.C. 1989). The controlling section of the WPA is D.C. Official Code § 1-615.52(a)(4):

> 'Illegal order' means a directive to violate or to assist in violating a federal, state
> or local law, rule, or regulation.

For the purposes of the WPA, an illegal order exists when there has been "a directive to violate" or "a directive . . . to assist in violating" a law, rule, or regulation. The language chosen by the Council makes it absolutely clear that Lowe must allege that she was given a directive and that she refused to obey it.

Lowe makes no allegation that she was given such a directive. Instead, she asserts that not giving her "advice," Amended Complaint, ¶ 44, would have constituted assistance to the allegedly illegal scheme and therefore amounts to a "directive." See Opposition, pp. 9-10. What this argument does is to confuse the separate statutory concept of an "illegal order" with a "protected disclosure." Since the Council provided separate definitions for these terms, it is clear that the Council intended that they address different conduct. Lowe's first argument in support of her claim that she engaged in protected activity – that she refused an illegal order – should be rejected as inconsistent with the plain language of the statute.

Lowe fares no better when she attempts to convert her "advice" into a "protected disclosure." The WPA defines "protected disclosure" as:

'Protected disclosure' means any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:

> (A) Gross mismanagement;

> (B) Gross misuse or waste of public resources or funds;

> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;

> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or

> (E) A substantial and specific danger to the public health and safety.

As with her "illegal order" argument, Lowe's position founders on the plain language of the WPA. As argued in the District's Memorandum, the correct interpretation of this provision is that it applies to conduct that has passed from the proposal stage into an actual violation of the law because no disinterested observer could equate proposed, but never acted upon, conduct with actual illegal conduct. As Lowe concedes generally, that interpretation is supported by the decision of the District of Columbia Court of Appeals in Zirkle v. District of Columbia, 830 A.2d 1250 (D.C. 2003).

Lowe attempts to save her Amended Complaint by suggesting that Paragraph 29 of the Amended Complaint involves a protected disclosure. In this paragraph, Lowe alleges that she informed the "Center (*sic*) for Disease Control" that two employees were on the grant payroll in violation of the terms and conditions of the applicable grant. Assuming that this disclosure occurred, Lowe still fails to allege that any DOH official was aware of the alleged communication. Unless Lowe alleges that the employer was aware of the allegedly protected

activity, she has not carried her prima facie burden.  Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 16 (D.D.C. 1998) (Kollar-Kotelly, J.) (Title VII).

Lowe's last argument is that another employee may have made a protected disclosure and that the other employee's protected disclosure should be attributed to her.  In support of this position, she cites two Merit Systems Protection Board opinions, but fails to cite the WPA itself. If she had cited the WPA, it would have been clear that her position is unsupported by the statute.  The WPA prohibits the following conduct:

> A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.

D.C. Official Code § 1-615.53 (emphasis added).  The Council prohibited supervisor's from taking a "prohibited personnel action" . . . because of the "employee's protected disclosure." Again, Lowe's argument founders on the plain language of the WPA: the Council did not write the "employee's" or someone else's protected disclosure.  Whatever value the MSPB opinions might have in interpreting and applying the federal statute, the WPA is clear that the vicarious protected disclosure is not a viable theory under District law.

Lowe's WPA claims should be dismissed.  Lowe repeatedly urges this Court to put off "these statutory interpretation questions . . . for another day."  Opposition, p. 10.  The Court, however, need only look to the plain language of the WPA to reject Lowe's various WPA claims.

    C.    <u>The Court Should Dismiss The Claims Against Defendant District Of Columbia Since It Did Not Violate The First Amendment</u>.

The District advanced two essential reasons for dismissing Lowe's First Amendment claim as a matter of law.  The first was that she had not alleged that a municipal policy directed

the District's employees to allegedly violate her rights. The second was that she did not speak out on a matter of public concern. Lowe fails to refute either reason.

As this Court recently explained, "[a] municipality, such as the District of Columbia, may be held liable under Section 1983 only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." Steele v. D.C. Hous. Auth., 2006 U.S. Dist. LEXIS 8239 (D.D.C. 2006) (Kollar-Kotelly, J.) (internal quotation marks omitted). Furthermore, "Plaintiff must show a course deliberately pursued by the city, as opposed to an action taken unilaterally by a non-policymaking municipal employee, and an affirmative link between the [city's] policy and the particular constitutional violation alleged." Id. (internal quotations omitted). The District showed that, according to Lowe's own allegations, the alleged wrongdoing was simply the misuse of supervisory authority.

Lowe makes no attempt to defend her assertion of *respondeat superior* liability to do so would be unavailing. See Monell v. Dep't of Social Servs., 436 U.S. 658, 692 (1978) (no *respondeat superior* liability under § 1983). Instead, Lowe argues that because DOH allegedly violated grant "guidelines," Opposition, p. 12, and she provided "advice" to that effect, Amended Complaint, ¶ 44, she has identified a sufficient basis for municipal liability.

Lowe errs in this respect. The inquiry is not whether a plaintiff made statements about a policy or program of government. The inquiry is whether a plaintiff has identified a policy that directs or requires that the government violate his or her rights. Bd. of County Commrs. v. Brown, 520 U.S. 397, 403-04 (1997); St. Louis v. Praprotnik, 485 U.S. 112, 126-27, 130 (1988)(plurality)[1]; Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). By focusing on DOH's compliance with the grant guidelines, Lowe fails to respond to the

District's argument on the issue presented by <u>Brown</u>, <u>Praprotnik</u>, and <u>Monell</u> thereby conceding the issue under <u>Glenn v. Williams</u>, 2006 U.S. Dist. LEXIS 8687 (D.D.C. 2006) (Kollar-Kotelly, J.), <u>quoting</u> <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 141 (D.D.C. 2003).

Lowe attempts to invoke the rule that has been applied in some instances that one unconstitutional act can suffice to establish an unlawful policy. Her analysis, however, does not extend beyond a string cite. Opposition, p. 13. Even if it had, Lowe's more fundamental failure to identify a policy renders her invocation of the one act rule ineffective. As this Court explained in <u>Steele v. D.C. Hous. Auth.</u>, 2006 U.S. Dist. LEXIS 8239 (D.D.C. 2006):

> As the Supreme Court has held,
>
> Proof of a single incident of unconstitutional activity is not sufficient to impose liability [against a municipality] under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. . . . Where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

<u>Id.</u>, <u>quoting</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985). In short, Lowe's First Amendment claim fails to meet the first requirement for any such action – identification of a basis for municipal liability.

The other reason that the District advanced for dismissing Lowe's First Amendment claim as a matter of law was that she did not speak out on a matter of public concern. This circuit applies a four-part test to decide whether a public employee has stated a claim under the First Amendment:

> [A] public official seeking to make out a claim of retaliation in violation of her First Amendment rights must meet a four-factor test. First, the public employee

---

[1]    <u>Praprotnik</u> was a plurality decision. However, it appears that the District of Columbia Circuit recognizes this Justice O'Connor's opinion as authoritative.

must have been speaking on a matter of public concern. If the speech is not of public concern, it is unnecessary to scrutinize the basis for the adverse action absent the most unusual circumstances.

Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees without disruption, outweighs the employee's interest, as a citizen, in commenting upon matters of public concern, and the interest of potential audiences in hearing what the employee has to say.

Third, the employee must show that her speech was a substantial or motivating factor in prompting the retaliatory or punitive act of which she complains. And finally, the employer should have an opportunity to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. The first two factors under the *Pickering* test are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury.

O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998) (passage edited for readability).

Lowe finds herself on the horns of a dilemma. She recognizes that "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[,]" Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), and so claims that, as to these statements only she ceased to be making statements as a grant administrator and became a "citizen." Yet, if she were not performing her official duties while at work, the government's interest "in promoting the efficiency of the public services it performs through its employees without disruption, outweighs" Lowe's interest in making the statements. Under either Garcetti or O'Donnell, Lowe has not stated a claim as a matter of law under the First Amendment.

The Amended Complaint, however, clearly alleges that Lowe's official duties included the administration of the grants about which she allegedly gave her "advice." Amended Complaint, ¶ 44. For example, ¶ 14 of the Amended Complaint reads:

During the time that Ms. Lowe served as *de facto* Acting Administrator, she was given complete responsibility for the administration, staff, and funding of grants for EHMSA. She led the agency's operational response to Hurricane Isabel, the

Ballou High School mercury spill, the Bethesda Naval Center anthrax scare, the ricin on Capitol Hill, and the lead in the water emergency. Under her direction, EHMSA conceived and developed the Emergency Healthcare Reserve Corps, the only comprehensive healthcare corps in the nation. Under Ms. Lowe's guidance and supervision, EHMSA completed spending $20 million in U.S. Department of Defense Emergency Preparedness Funds, wrote four (4) federal bioterrorism preparedness grants, and met the goals for two previously awarded grants. (Emphasis added).

According to ¶ 14, her official duties included spending "$20 million in U.S. Department of Defense Emergency Preparedness Funds[.]" If Lowe had "complete responsibility" for this task – and the Court must take her allegation as true for the purpose of this motion – her duties certainly included ensuring that funds were spent according to the applicable guidelines. Indeed, Lowe confirmed the implication of ¶ 14 when she alleged that, as of Spring 2003, her duties included "grant writing and implementation" and that those duties continued after that date. See Amended Complaint, ¶ 21 ("In fact, Dr. Woldu implicitly recognized this himself when he charged Ms. Lowe with the continued duties of grant writing and implementation (neither of which were duties in the official position description for the Deputy Administrator"). The Amended Complaint makes similar allegations throughout. See, e.g. Amended Complaint, ¶¶ 18, 20, 31, 32, & 33. In short, under her own allegations, Lowe did not speak out as a citizen on a matter of public concern.

Lowe now contends that none of her statements were made pursuant to her official duties. Opposition, pp. 15-16. If so, her repeated interference and diversion from her official duties establishes that the governmental interest in "promoting the efficiency of the public services it performs through its employees without disruption, outweighs the employee's interest" in speaking out as she pleases. O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998). If the Court accepts Lowe's alternative contention that her statements had nothing to do with her official duties, i.e., that her official duties had nothing to do with "grant writing and

implementation," the picture that emerges is of an employee, without any special expertise, doing little more than seeking out and engaging in conflict with her supervisors.  See, e.g. Amended Complaint, ¶¶ 15, 17, 18, 19, 20, 23, 33, 34, & 38.  This is hardly conducive to the efficient provision of public services.  Given the allegations of disruption (if Lowe's alternative theory that the statements had nothing to do with her official duties is accepted), the Court can rule as a matter of law that the government's interest in promoting the efficient provision of public services outweighs Lowe's interest in providing "advice" to those in charge of DOH and who bore the administrative responsibility for the implementation of DOH programs.

## IV.     CONCLUSION

Lowe has not offered any non-conclusory basis for sustaining her Amended Complaint. She did not refuse to obey an illegal order or make a protected disclosure affecting her employment.  She has not identified an unconstitutional municipal policy that directly caused the alleged violation of her rights nor did she speak out on a matter of public concern.  Even if it could be said that she did, the governmental interest in promoting the efficient provision of public services outweighs any interest that she might be able to assert.  Lowe has failed to state a claim upon which relief can be granted.  Her Amended Complaint should be dismissed with prejudice.

Dated: September 15, 2006                    Respectfully submitted,

                                             ROBERT J. SPAGNOLETTI
                                             Attorney General for the District of Columbia

                                             GEORGE  C. VALENTINE
                                             Deputy Attorney General
                                             Civil Litigation Division

/s/ Kimberly Johnson   /Wendel Hall
KIMBERLY MATTHEWS JOHNSON
Chief, General Litigation I
D.C. Bar No. 435163



/s Wendel Hall
WENDEL V. HALL
Assistant Attorney General
D.C. Bar No. 439344
Suite 6S012
441 4th Street, N.W.
Washington, D.C.  20001
(202) 724-6608
(202) 727-0431 (fax)
E-mail: wendel.hall@dc.gov