## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THYRA LOWE,**

**Plaintiff,**

**v.**

Civil Action 05-2205 (CKK/JMF)

**DISTRICT OF COLUMBIA, <u>et al.</u>**

**Defendants.**

## MEMORANDUM OPINION

Before me is Plaintiff Thyra Lowe's <u>Motion to Compel Defendants to Fully</u> <u>Answer All Interrogatories and to Comply with All  Document Production Requests</u> <u>Submitted in Discovery and for Sanctions Against Defendants</u> [#30] ("Motion"), which was referred to me for resolution by Judge Colleen Kollar-Kotelly.  For the reasons stated below, the Motion will be granted in part and denied in part.

## I.    <u>Background</u>

Lowe alleges in this action that she was unlawfully terminated when her employer, the District of Columbia Department of Health ("DOH"), eliminated her position "in retaliation for [her] speaking out against violations of District of Columbia and federal regulations and laws, and for other protected activity disclosing waste, fraud, abuse, and gross mismanagement."  <u>Amended Complaint for Unlawful Employment</u> <u>Retaliation</u> [#14] at 2.  She brings this action under 42 U.S.C. § 1983 and the District of

Columbia Whistleblower Reinforcement Act against defendants District of Columbia (the "District"), Gregory Payne[1], Monica Lamboy, Thomas Calhoun, and Cheryl Edwards.

### A.    **Plaintiff's Motion**

The Motion before the Court involves what Lowe alleges to be defendants' inadequate responses to her interrogatories and document requests.  She seeks: (1) an order compelling defendants to fully respond to her discovery requests; (2) an award of attorneys fees and costs incurred in the preparation of the Motion; and (3) a sanction prohibiting defendants from asserting any further objections to the discovery requests. Proposed Order, attached to Motion.  In opposing the Motion, defendants argue that their discovery responses are sufficient and/or would be supplemented.  Defendants' Opposition to Plaintiff's Motion to Compel and for Sanctions ("Opposition" or "Opp.").

### B.    **Defendants' Supplemental Production**

On January 7, 2008, defendants' filed Defendants' Supplemental Opposition to Plaintiff's Motion to Compel and for Sanctions [#40] ("Supplement" or "Supp."), in which they informed the Court that they had supplemented their discovery responses. The Court, on February 4, 2008, ordered Lowe to describe whether this supplemental production had remedied any of the deficiencies she alleged in her Motion.  In accordance with that order, Lowe filed Plaintiff's Reply to Supplemental Opposition to Plaintiff's Motion to Compel Following Supplemental Responses ("Reply to Supp."), in which she withdrew some of her initial objections.

---

[1]    The parties frequently refer to Payne as "Pane."

C.    **Discovery Responses at Issue**

The following chart indicates which discovery responses remain at issue:

| Defendant | Interrogatory Objections Withdrawn | Interrogatory Objections Remaining | Document Request Objections Withdrawn | Document Request Objections Remaining |
|---|---|---|---|---|
| District of Columbia | Nos. 5-6, 8-10, and 16 | Nos. 3, 7, 11-15, and 21 | --- | Nos. 1-6 |
| Gregory Payne | --- | Nos. 1 and 6 | --- | All |
| Monica Lamboy | No. 2 | Nos. 3-4, 6, 15-16, and 18 | --- | All |
| Thomas Calhoun | --- | --- | --- | All |
| Cheryl Edwards | --- | --- | --- | All |

II.    **Analysis**

A.    **Requests for Production of Documents**

1.    **The District's Document Production**

As mentioned above, the District has produced additional documents in the time since the Motion was filed.  Lowe acknowledges that at least some of these documents are responsive, but she "is not prepared to withdraw her Motion to Compel until such time as the detailed review of the documents submitted can be completed."  Reply to Supp. at 7.  It would be imprudent for the Court to rule on objections that may already be remedied; as such, Lowe's objections to the District's document production will be dismissed without prejudice with leave to re-file after completion of her "detailed review."

2.    **The Document Production of Lamboy, Calhoun and Edwards**

Lowe objects in her Motion to the entire document production of Lamboy, Calhoun and Edwards; none of these individual defendants have produced any documents, either initially or in the supplemental production.

- 3 -

Lamboy responded to each document request:

> None. I do not have possession, custody, or control of hard-copy documents within the scope of this request as I am no longer employed by the Department of Health. I may have possession, custody, or control of some electronic documents within the scope of this request and am attempting to identify such documents.

Id. at 29-30.  Calhoun responded to each document request:

> No such documents are in my care, contact, and/or custody. To the extent that such documents do exist, see the District of Columbia's Responses to Plaintiff's Request for Production, Exhibit 4.

Id. at 29.  Edwards responded to each document request:

> None. I do not have possession, custody, or control of documents within the scope of this request as I am no longer employed by the Department of Health. To the extent that such documents do exist, see the District of Columbia's Responses to Plaintiff's Request for Production, Exhibit 4.

Id. at 30.

Lowe argues that each of these defendants has been named in their personal and official capacity and, as a result, "*share* a duty [with the District] to provide all documents responsive to these requests."  Id. at 29-31 (emphasis in original).  Moreover, Lowe argues that "[e]ven if [they] no longer ha[ve] personal access to such documents [they have] a duty to find and provide such documents."  Id.  Defendants respond that Lamboy, Calhoun and Edwards are no longer employed by DOH Emergency Health and Medical Services Administration ("EMHSA") and therefore have no access to the requested documents.  Opp. at 2.  Defendants also proffer that their counsel "has either met with or spoken to each of these defendants and they have assured undersigned

counsel that they do not have any documents in their care, control, custody or possession relating to this matter." Id.

Rule 34 of the Federal Rules of Civil Procedure limits document requests to those documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Former employees of government agencies do not have "possession, custody, or control" of documents held by their former employers. While it is theoretically possible that Lamboy, Calhoun or Edwards took personal possession of responsive documents during their employment and that those documents remain in their possession, no evidence has been presented that would contradict the defendants' assertions to the contrary. For this reason, Lowe's Motion will be denied as it relates to the responses to document requests of Lamboy, Calhoun and Edwards. See Doe v. District of Columbia, 231 F.R.D. 27, 35 (D.D.C. 2005) ("Obviously plaintiff is not obliged to produce anything that is not in his possession, custody, or control, with respect to this or any other document request.").

### 3.    The Document Production of Payne

Lowe complains that Payne has not produced any documents in response to her document requests. Payne responded to each document request:

> None. I do not have personal possession, custody, or control of documents within the scope of this request. To the extent that such documents do exist, see the District of Columbia's Responses to Plaintiff's Request for Production, Exhibit 4.

Motion at 28. Lowe argues that, as Director of DOH, "he has control of and access to all responsive documents in the possession of DOH, EHMSA and any DOH and/or EHMSA personnel." Id. As a government employee, however, Payne's "control"

of documents created in the ordinary course of the government's business is secondary to that of his employer; he cannot on his own initiative remove government files and provide them to a third party.  Cf. United States ex. rel. Touhy v. Ragen, 340 U.S. 462, 467 (1951).  Lowe must look to the District of Columbia for the production of Payne's files.

**B.    Interrogatories**

**1.    The District's Responses to Interrogatories**

**a.    Interrogatory No. 3**

| Interrogatory No. 3: |
| --- |
| For each individual named in response to Interrogatory #2, please describe in detail what role they played in the decision, what information they provided or what other contribution they made to the decision to abolish Ms. Lowe's position. |
| The District's Response: |
| Mr. Tillery was the Interim Director of DOH. Ms. Lamboy was the Chief Operating Officer and Ms. Edwards was the Chief of Staff for DOH. |

Lowe argues that the District's answer does not describe in detail the roles of the eight persons named in Interrogatory No. 2.  Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Defendants to Fully Answer All Interrogatories and to Comply with All  Document Production Requests Submitted in Discovery ("Memo") at 4-5.  Defendants concede that point, but refer Lowe to Lamboy's answer to Interrogatory No. 16, in which she stated that the only persons with a role were Lamboy, Payne and Edwards.  Opp. at 11.  Perhaps recognizing that this response still failed to explain in detail the roles, information provided, or contributions made by those three people, the District later provided the following supplementary response[2]:

---

[2]        In the interest of accuracy, all discovery requests and responses have been reproduced here exactly as submitted by the parties in their briefs, including typographical errors.

Supplemental Response to Interrogatory No. 3:

Ms. Monica Lamboy was the Chief Operating Officer. The reason for the abolishment of Ms. Lowe's position according to Ms. Lamboy: "During the summer of 2004, we reorganized several administrations. At the time, Interim Director Tillery, Ms. Edwards and myself decided to make no change in EHMSA in order spend more time understanding its operating needs and grant funding constraints. At the time, EHMSA was overseen by Dr. Thomas Calhoun, Medical Officer and Acting Senior Deputy Director, and Thyra Lowe, Administrator. While Dr. Calhoun was the administration director, Ms. Lowe provided direct supervision to all of the staff. In July 2004, Ms. Sherry Adams returned to EHMSA as Assistant Senior Deputy Director. In effect, this created a three-tiered management structure for a work until that only had 32 employees. We came to realize over the following months that this was not a workable structure for such a small organization and that it would be better served with a structure similar to the other administrations with modification. In discussion with Dr. Pane and Cheryl Edwards, we determined it would be best to create a Chief of Staff position, where the COS reported to the director but did not have a direct oversight of employees and to maintain the Administrative Officer position instead of upgrading to an ASM because the budget was very small relative to the other administrations. In recognition of the 24 hour nature of EHMSA's business, it was determined that the Assistant Senior Deputy position would remain although this would be the only administration with this position. The Medical Director position was to be eliminated in recognition that a full time position was not required for this administration. As a result, the position was eliminated, but funding was set aside for a part time, contract position. The result or the reorganization would be a significantly flatter organization that would have greater parallels with other administrations. Ms. Cheryl Edwards was the Chief of Staff for Department of Health. The reason for the abolishment of Ms. Lowe's position according to Ms. Edwards: "It was a result of the restructuring of the program. The program was restructured to enhance improvements in the program and grants management." See interrogatory no. 3 within Cheryl Edward's responses and objections to Plaintiff's first set of interrogatories. Dr. Thomas Calhoun was the Senior Deputy Director for EHMSA. The reason for the abolishment of Ms. Lowe's position according to Dr. Calhoun: "I had no role in abolishing Ms. Lowe's position." See interrogatory no. 3 within Thomas Calhoun's Responses and Objections to Plaintiff's First Set of Interrogatories. Dr. Gregg Pane was the director of the department of health. The reason for the abolishment of Ms. Lowe's position according to Dr. Pane: " I was told by Monica Lamboy that it was part of the Department of Health realignment that was then being completed." See interrogatory no. 3 within Gregg A. Pane's Responses and Objections to Plaintiff's First Set of Interrogatories.

Lowe is not satisfied with this supplemental response, which she claims still does not provide sufficient detail; it does not, for example, "answer who proposed the termination, who, if anyone, gathered information for the other managers to review, who, if anyone, interviewed the managers and advisors named in the response, to get their views." Supp. Resp. at 3. Moreover, she argues that the answer does not address other individuals encompassed within the interrogatory. Id.

The supplemental response by the District is sufficient; it is understandable that Lowe would like more information, but her interrogatory was not crafted with the specificity that would justify compelling a more detailed response. It is clear from the response that Lamboy believes the termination to have been the result of a team effort between herself, Payne, and Edwards, and she provides the rationale and information that led to the decision. As for the individuals not referenced in the response, it is clear that the District's position is that those individuals had no role in her termination; as such, there is no information to provide. That Lowe believes otherwise does not make the response incomplete.

### b.    **Interrogatory No. 7**

| Interrogatory No. 7: |
|---|
| For each employee who was given one or more of the duties Ms. Lowe performed, please describe in detail the qualifications and experience that employee had which led the deciding management officials to believe they were qualified to perform those duties. |
| The District's Response: |
| At the time Sherry Adams was the Assistant Senior Deputy Director. I had returned to EHMSA in June or July of that year after a 13 month absence. Prior to her absence, Ms. Adams had been Ms. Lowe's direct supervisor and had previously overseen the grants. Mr. Brave was a former DC Fire Paramedic and officer with at least an undergraduate degree and Dr. Elting was an M.D. |

Lowe argues that the District's answer does not describe in detail *all* of the duties of the employees, which duties were assigned to which staff, and does not describe the qualifications and experience of those employees. Memo at 7. She also argues that the response says nothing of Mr. Rod Blair's qualifications, and alleges that Mr. Blair was a caterer prior to assuming some of Ms. Lowe's duties. The District provided the following supplemental response:

> Supplemental Response to Interrogatory No. 7:
> At the time, Ms. Sherry Adams was the Assistant Senior Deputy Director. Ms. Adams had a master's level nursing degree and had worked in EHMSA for many years and had the knowledge and experience to perform the job. Ms. Adams had returned to EHMSA is June or July of 2004 after a 13 month absence. Prior to her absence, Ms. Adams had been Ms. Lowe's direct supervisor and had previously overseen the grants. Mr. Brave was a former DC Fire Paramedic and officer with at least an undergraduate degree. Dr. Elting was a M.D. within a military background and he had prior experience in bioterrorism and emergency health.

Lowe remains unsatisfied with the response, arguing that no information has been provided of Mr. Blair, who she alleges had taken on most of her duties. Supp. Resp. at 4. She also argues that no explanation has been provided as to how Mr. Brave's qualifications are relevant to the duties he assumed. Id.

This interrogatory requests the qualifications of those who were assigned Lowe's duties; despite her objections, it does not request information concerning the distribution of those duties, nor does it require the District to specifically explain how each qualification fit each assigned duty. The response provides a sufficient answer as to the qualifications of Adams, Brave, and Elting; Lowe is free to rebut the District's position that these qualifications were sufficient to justify the assigned duties, but her disagreement does not make the response insufficient. As for Mr. Blair, the District's

silence serves as an assertion that he did not assume any of Lowe's duties; if they fail to supplement their response to indicate otherwise, Lowe is free to rebut that assertion or use it for purposes of impeachment.

        **c.**        **Interrogatory No. 11**

| |
|---|
| Interrogatory No. 11:<br>Please identify the participants, location, dates, and describe in detail the subject matter and discussion of any meetings or communication among DOH officials in which Ms. Lowe's protests or objections to EHMSA's decision to award a contract to Mayor Sharon Pratt Kelley was discussed. |
| The District's Response:<br>Based on available information, the protests or objections occurred during the period of time that Michael Richardson, M.D. was the Senior Deputy Director for EHMSA. The contracts being discussed for former Mayor Kelley that included major information technology projects. |

Lowe argues that this answer is "wholly non-responsive" because it does not identify *any* participants, locations, or dates. Memo at 9-10. Defendants respond that this information is all that is available to them. Opp. at 16. Lowe is correct that the response does not provide the details requested because it only specifies that protests or objections occurred during a particular period of time. The District shall supplement its response by stating specifically whether it is aware that the meetings described in the interrogatory took place and, if it is so aware, it shall identify the "participants, location, dates" and subject matter of those meetings, as well as describe in detail the discussions that took place.

        **d.**        **Interrogatory No. 12**

| |
|---|
| Interrogatory No. 12:<br>Please identify the participants, location, dates, and describe in detail the subject matter and discussion of any meetings or communication among DOH officials in which Ms. Lowe's protests or objections to EHMSA's attempts to pay the salary of Dr. Jeff Elting or any other DC Hospital Association personnel was discussed. |
| The District's Response: |

> Based on available information, the conversations were between Thyra
> Lowe and Ronald Lewis who was Monica Lamboy's predecessor and
> served as the Interim Administrator after Michael Richardson, M.D. left
> DOH. It was generally known in EHMSA that Ms. Lowe objected to Jeff
> Elting, M.D. being paid off the grants due to the sum of money involved
> and HRSA's objections.

Lowe argues that this answer is "wholly non-responsive" because it does not

identify *in detail* the participants, locations, or dates.  Memo at 10-11.  She suggests that

there exists responsive information concerning an e-mail written on June 30, 2004, and a

meeting or meetings between her and Herbert Tillery.  Id.  Defendants respond that this

information is all that is available, and they indicate that their inquiry was constrained

because Richardson is no longer employed by the District.  Opp. at 16-17.  The District

later provided the following supplemental response:

> Supplemental Response to Interrogatory No. 12:
> Based upon available information, the conversations were between Thyra
> Lowe and Ronald Lewis who was Monica Lamboy's predecessor and
> served as the Interim Administrator after Michael Richardson, M.D. left
> DOH. It was generally known in EHMSA that Ms. Lowe objected to Jeff
> Elting, M.D. being paid off the grants. See the previously provided June
> 30, 2004 email located within Defendant's Exhibit 4 for the position of
> Ms. Melissa Sanders on the funding for an Associate Medical Direction
> Position.

Lowe argues that this response "utterly lacks credibility" because it implies that

there were no meetings at which the issue was discussed, and she suggests that the

response is in conflict with interrogatory answers given by other defendants.  Supp. Resp.

at 5.  The Court agrees that the response indicates that further information is available,

and instructs the District to supplement its response with information concerning the

"available information" upon which it relies, its efforts to obtain information from Lewis,

Richardson and Tillery, its basis for the assertion of what was "generally known," and

any responsive information stemming from meetings between Tillery and Lowe.

e.     **Interrogatory No. 13**

| Interrogatory No. 13: |
| Please identify the participants, location, dates, and describe in detail the subject matter and discussion of any meetings or communication among DOH officials in which Ms. Lowe's protests or objections to EHMSA's attempts to reallocate DOH personnel under the federal grants EHMSA administered was discussed. |
| The District's Response: |
| Ms. Lowe had regular and routine communication with HRSA and CDC. Monica Lamboy participated on one or more conference calls regarding grant management and both agencies inquired regarding the pace of filling vacancies. |

Lowe argues that this answer is "wholly non-responsive" because it does not identify the participants, location, and dates of any meetings or communication, and does not identify *in detail* the subject matter and discussions. Memo at 11. Defendants complain of the breadth of this interrogatory in light of the many communications Lowe would have had with HRSA and CDC pursuant to her job duties. Opp. at 17. They claim they have provided all available information, the inquiry was hampered by faded memories, and that plaintiff is in the best position to "describe these encounters." Id.

The District's obligation to conduct a sufficient inquiry into communications between it and Lowe is not excused merely because there were many such communications; Lowe's interrogatory does not request an inventory of all such communications, but instead focuses on those which involved discussions of subject matter at issue in the question posed. Once again, the District shall supplement its response by stating specifically whether it is aware that the meetings described in the interrogatory took place and, if it is so aware, it shall identify the "participants, location, dates" and subject matter of those meetings, as well as describe in detail the discussions that took place.

f.    **Interrogatory No. 15**

> Interrogatory No. 15:
> Please identify the participants, location, dates, and describe in detail the subject matter and discussion of any meetings or communication among DOH officials in which Ms. Lowe's contacting he federal Center for Disease Control and Prevention and HRSA regarding DOH's possible or actual violation or laws, rules or regulations governing management of the federal grants administered by EHMSA was discussed.
>
> The District's Response:
> On October 15, 2004, Gregg Pane, M.D. and Cheryl Edwards met with Thomas Calhoun,M.D. then Thyra Lowe and then Ms. Sherry Adams. Ms. Adams was told that Dr. Calhoun had been reassigned and Ms. Lowe dismissed. Within the hour, Dr. Pane, Ms. Edwards and Monica Lamboy met with the EHMSA staff including Dr. Calhoun and Ms. Adams to inform them of the changes. Before the close of business that day, Ms. Adams received an email from James Morris, the HRSA program officer, saying that HRSA was restricting our entire grant fund due to the personnel changes. Ms. Adams informed her supervisors.
>
> Roderick Blair was introduced to EHMSA staff the following Monday, October 18, 2004.  Around October 19th, Mr. Blair claim to Ms. Adams' office and informed her that Ms. Lowe had violated federal law by notifying the granting agencies of her removal. Ms. Adams informed him that she believed that the federal agencies require key personnel to notify them if they are released, promoted out of position, etc. Ms. Adams told Mr. Blair that Dr. Pane needed to immediately notify HRSA and CDC in writing of the changes. Mr. Blair informed Ms. Adams that it was being done.

Lowe argues that this answer is "wholly non-responsive" because it does not identify *in detail* the subject matter and discussions.  Memo at 13.  She also expresses disbelief that the communications described in the response are the only ones that occurred.  Memo at 13.  Defendants respond that they have provided all the information that is available to them.

The District has described, as the interrogatory requests, the content of responsive discussions held on or around October 19, and has indicated those that participated in those discussions.  This response provides sufficient information.

g.    **Interrogatory No. 21**

| |
|---|
| Interrogatory No. 21: |
| Between November, 2002 and October 15, 2004, did any DOH officials discuss candidates, or formally or informally interview potential candidates for the Deputy Administrator or Chief of Staff of EHMSA position? If so, what DOH officials were involved, who did they consider for the position, and when did they discuss or interview those individuals? |
| The District's Response: |
| There were no discussions or interviews related to replacing Thyra Lowe. Ms. Lowe's position was abolished. Based on available information, no discussions or interviews related to the Chief of Staff position to [sic] occurred in the time period stated in the interrogatories. |

Lowe doubts the credibility of this answer, arguing that it is "amazing" and indicative of bad faith.  Memo at 14-15.  She argues that the hiring of Andrew Brave demonstrates that, contrary to the District's answer, responsive discussions and interviews occurred.  Id.  Defendants perfunctorily respond that they have provided a full response despite Lowe's skepticism.  Opp. at 20.

It is the Court's assumption that defendants' position is that there no longer exist the positions described by Lowe, *i.e.* "the Deputy Administrator or Chief of Staff of EHMSA."  If this is correct then the District's response is sufficient; Lowe may have intended for the interrogatory to encompass all positions that require the performance of duties previously assigned to "the Deputy Administrator or Chief of Staff of EHMSA," but that is not what was asked.  If anyone, including Brave, was interviewed or hired to fill those positions following Lowe's departure, the District must supplement its response and explain why that information was not included in its initial response.

2.    **Gregory Payne's Responses to Interrogatories**

a.    **Interrogatory No. 1**

| |
|---|
| Interrogatory No. 1: |
| Please state, in detail, your role as Director of the Department of Health in |

| |
|---|
| the "reorganization" of EHMSA in 2004 that resulted in the abolishment of Ms. Lowe's position. |
| Gregory Payne's Response:<br>When I arrived at the Department of Health as then-Acting Director in September 2004, the realignment was mostly completed. |

Lowe argues that this answer is evasive and non-responsive, and conflicts with interrogatory answers given by the District. Memo at 15. She points to interrogatory answers provided by the District in which it describes Payne as having been involved in discussions and decisions concerning the reorganization of EHMSA. Id. Defendants respond that it is Payne's position that his only role was to "sign the final reorganization plan because that had not been done by the time the prior Director left DOH." Opp. at 3-4. Defendants argue that any conflict between the responses of Payne and the District are the result of Payne's recollection and the District's "collective knowledge," not of evasiveness on the part of Payne. Id. at 4.

The Court finds defendants' explanation to be reasonable; Payne's response comports with his recollection, and Lowe is free to test his credibility during a deposition. See Milner v. Safeway Stores, Inc., No. 04-cv-1870, 2006 WL 89828, at *3 (D.D.C. 2006) ("[D]efendant cannot be forced to give a more detailed answer than the one it gave when the one it gave is what it claims to be the truth.").

### b.    Interrogatory No. 6

| |
|---|
| Interrogatory No. 6:<br>Please state whether you were aware that Ms. Lowe had contacted the federal Center for Disease Control and Prevention (CDC) and Health Resources Services Administration (HSRA) regarding proposed personnel moves and/or funding allocations under the federal grants from these agencies administered by EHMSA. If you were aware of this, please state what you knew, and how and when you came by the information. |
| Gregory Payne's Response:<br>I believe that I and others were informed that Thyra Lowe contacted the federal Centers for Disease Control and Prevention and the federal Health |

> Resources and Services Administration on the day that the position was abolished.

Lowe argues that this answer does not respond to *how* Payne came to know the information or *what* he knew, and does not describe who the "others" are to whom he refers. Memo at 16. It appears that her argument is unfounded; that he begins his response with "I believe" indicates that his recollection is not strong, and defendants rightly observe that the event in question occurred over three years ago. Opp. at 5. Nevertheless, he does indicate *what* he knew: that Lowe had contacted the entities in question. To the extent that he recalls more than this, including *how* he learned of this information (such as who told him), he is to supplement his response. As for the "others" to whom he refers, the interrogatory does not require any elaboration on their identity or knowledge unless it directly relates to *how* Payne acquired the information at issue.

### 3.    Monica Lamboy's Responses to Interrogatories

#### a.    Interrogatory No. 3

> Interrogatory No. 3:
> Please explain your rationale for abolishing the position held by Ms. Lowe in October, 2004.
>
> Monica Lamboy's Response:
> As stated above, during the summer of 2004, we reorganized several administrations. At that time, Interim Director Tillery, Ms. Edwards and myself decided to make no change in EHMSA in order spend [sic] more time understanding its operating needs and the grant funding constraints. At the time, EHMSA was overseen by Dr. Thomas Calhoun, Medical Officer and Acting Senior Deputy Director, and Thyra Lowe, Administrator. While Dr. Calhoun was the administration director, Ms. Lowe provided direct supervision to all of the staff.
>
> In July 2004, Ms. Sherry Adams returned to EHMSA as Assistant Senior Deputy Director. In effect, this created a three-tiered management structure for a work unit that had 32 employees. We came to realize over the following months that was not a workable structure for such a small organization and that it would be better served with a structure similar to the other administrations with modifications. In discussion with Dr. Pane

> and Cheryl Edwards, we determined it would be best to a create a Chief of
> Staff position, where the COS reported to the director but did not have
> direct oversight of employees and to maintain the Administrative Officer
> position instead of upgrading to an ASM because the budget was very
> small relative to the other administrations. In recognition of the 24 hour
> nature of EHMSA's business, it was determined that the Assistant Senior
> Deputy position would remain although this would be the only
> administration with this position. The Medical Director position was to be
> eliminated in recognition that a full time position was not required for this
> administration. As a result, the position was eliminated, but funding was
> set aside for a part time, contract position.
>
> The result or [sic] the reorganization would be a significantly flatter
> organization that would have greater parallels with other administrations.

Lowe argues that this answer "generally" explains Lamboy's rationale regarding

other positions in the reorganization plan, but does not speak to the abolishment of

Lowe's position.  Memo at 17-18.  Defendants respond that the response is "clear and

detailed," and explains that her position was abolished to remedy an inefficient "three-tier

management structure."  Opp. at 7.  Defendants later supplemented the response, but

Lowe complains that the response is "roughly the same" as the District's supplemental

response to Interrogatory No. 3 and, as a result, her objections mirror those raised there.

Reply to Supp. at 5.  As with that interrogatory, the Court finds the response to be

sufficient; Lamboy clearly explains the decision to abolish Lowe's position as stemming

from a desire for greater organizational efficiency.

### b.    Interrogatory No. 4

> Interrogatory No. 4[3]:
> Please state in detail any knowledge you had of Ms. Lowe protesting or
> objection to proposals or personnel changes and/or funding allocations
> within EHMSA related to personnel salaries, and when and how you

---

[3]        This recitation of Interrogatory No. 4, found at page 6 of Lowe's reply to defendants'
supplemental responses, differs with the one found in her Motion: "Please identify any management or staff
who spoke to you about Ms. Lowe regarding her performance, conduct or tenure at the DOH, explaining
what the individuals told you about Ms. Lowe."  Motion at 18.  Based on the briefing, the Court will
assume that the correct version is that set forth in her reply to defendants' supplemental responses.

> learned of her dissent.
>
> Monica Lamboy's Response:
> I was aware of Ms. Lowe's concerns regarding the delays in filling vacant
> positions within the EHMSA and the impact that would have upon the
> future of the grant. I also was generally aware of her opinion that in the
> past, positions had been budgeted to the grant, which should not have
> been. Given that throughout the summer and fall of 2004, I was reviewing
> the entire DOH budget position by position to determine if the funding
> allocation was correct, her concerns were not unique. As a result of my
> analysis, I eliminated over 200 unfunded positions across DOH that fall.
>
> I was also aware of Ms. Lowe's concerns that the staff-level salaries at
> EHMSA were low relative to the responsibilities. This, too, was not
> unique to EHMSA and was an issue in several other administrations. By
> the time I left DOH in July 2006, I had been able to upgrade over 30
> positions at DOH, several within the EHMSA.

Lowe argues that this answer is evasive and non-responsive because it does not

describe what other managers or staff had spoken to Lamboy about Lowe, does not

describe *in detail* Lamboy's knowledge of Lowe's protests and objections, and does not

identify the personnel who spoke to Lamboy.  Memo at 18-19.  Defendants respond that

Lamboy's response to Interrogatory No. 3 identified Calhoun, Adams, and Davenport as

the persons who provided her with information about Lowe.  Opp. at 8.  Defendants later

provided the following supplemental response:

> Supplemental Response to Interrogatory No. 4:
> I was aware of Ms. Lowe's concerns regarding the delays in filling vacant
> positions within EHMSA and the impact that would have upon the future
> of the grant. I also was generally aware of her opinion that in the past,
> positions had been budgeted to the grant, which should not have been.
> Given that throughout the summer and fall of 2004, I was reviewing the
> entire DOH budget position by position to determine if the funding
> allocation was correct, her concerns were not unique. As a result of my
> analysis, I eliminated over 200 unfunded positions across DOH
> that fall. I was also aware of Ms. Lowe's concerns that the staff level
> salaries at EHMSA were low relative to the responsibilities. This too was
> not unique to EHMSA and was an issue in several other administrations.
> By the time I left DOH In July 2006, I had been able to upgrade over 30
> positions at DOH, several within EHMSA.

Lowe argues that this supplemental response does not provide any additional information concerning "what Ms. Lowe objected to, or when and how Ms. Lamboy learned about Ms. Lowe's views."  Reply to Supp. at 6.  The Court finds the responses sufficient as to Lamboy's knowledge of Lowe's protests and objections, but agrees with Lowe that the response does not describe "when and how" Lamboy learned of the dissent.  Interrogatory No. 4.  Lamboy is to supplement her response to the extent that she recalls this information.

### c. <u>Interrogatory No. 6</u>

> Interrogatory No. 6:
> Please state whether you were you aware that Ms. Lowe had contacted the federal Center for Disease Control and Prevention (CDC) and Health Resources Services Administration (HSRA) regarding proposed personnel moves and/or funding allocations under the federal grants from these agencies administered by EHMSA. If so, please state what you knew and how and when you came by the information.
>
> Monica Lamboy's Response:
> I am uncertain what this question is specifically asking. I was aware that Ms. Lowe had regular and routine communication with both of these agencies. I had participated on one to two conference calls regarding grant management and both agencies inquired regarding the pace of filling vacancies.

Lowe argues that this answer is evasive and non-responsive because it indicates that meetings occurred but does not describe them in detail.  Memo at 19-20.  Defendants respond that Lamboy provided the best answer she could in light of her expressed uncertainty regarding the question posed.  Opp. at 8-9.

Lamboy's response leaves unanswered the specific questions asked: whether she is aware that Lowe had contacted CDC and HSRA regarding (1) proposed personnel moves, and/or (2) funding allocations under the federal grants from those agencies administered by EMHSA.  Lamboy shall supplement her response with answers to those

two questions and, if the answer to either question is yes, she shall state what she knows, and "how and when [she] came by that information."

### d.   <u>Interrogatory No. 15</u>

> **Interrogatory No. 15:**
> When were Andrew Brave, Rod Blair and Dr. Jeff Elting offered positions at EHMSA, and who made the offers?
>
> **Monica Lamboy's Response:**
> I don't personally recall the specific answers. The information should be available through the Department of Health's Human Resources Division.

Lowe argues that this answer is evasive and non-responsive because, as an agent of DOH, Lamboy had direct access to the information requested and has a duty to obtain it.  Memo at 20-21**.**  The interrogatory asks a specific question, however, and it was answered by Lamboy.  Nothing more is required.

### e.   <u>Interrogatory No. 16</u>

> **Interrogatory No. 16:**
> What part did Ava Greene Davenport, Cheryl Edwards, Briant Coleman, Dr. Calhoun, Sherry Adams, Deirdre Jordan, Robb Bobb, Sharon Baskerville, Robert Malson, and Jeff Elting play in the decision to abolish Ms. Lowe's position?
>
> **Monica Lamboy's Response:**
> The decision to abolish Ms. Lowe's position was made by Dr. Gregory A. Pane, Cheryl Edwards, and myself. The others played no part.

Lowe argues that this answer is evasive and non-responsive because it construes a "part" in the decision to include only the making of final decisions, and because it conflicts with responses to interrogatories by the District.  Memo at 21-22.  Defendants respond that the word "part" is not defined, and, as a result, Lamboy's construction is reasonable.  Opp. at 9-10.  Defendants also provided this supplemental response:

> **Supplemental Response to Interrogatory No. 16:**
> The decision to abolish Ms. Lowe's position was made by Dr. Gregg A. Pane, Cheryl Edwards, and myself. I have no personal knowledge of involvement by any of the individuals listed above in the decision making

| process. |
| --- |

Lowe finds this response "inadequate, evasive [and] contradictory."  Reply to Supp. at 6.

The Court does not find merit in Lowe's arguments; it is clearly Lamboy's recollection that the decision to abolish Lowe's position, and the decision making process that led to that decision, involved only Payne, Edwards, and herself.  This is a complete response to the interrogatory, and it is not evasive or incomplete merely because her recollection conflicts with the responses provided by the District.  See Milner v. Safeway Stores, Inc., No. 04-cv-1870, 2006 WL 89828, at *3 (D.D.C. 2006) ("[D]efendant cannot be forced to give a more detailed answer than the one it gave when the one it gave is what it claims to be the truth.").

### f.    Interrogatory No. 18

| Interrogatory No. 18: |
| --- |
| What was the disposition of Ms. Swain's infraction? |
| Monica Lamboy's Response: |
| Ms. Swain submitted an appeal to the notice of suspension indicating that she was directed to engage in the unlawful activities at the direction of Ms. Lowe, her supervisor. The determination upon that appeal is a personnel matter. |

Lowe argues that this answer is evasive and non-responsive because it does not provide the information requested, and does not provide an objection or privilege for withholding information based on it being "a personnel matter."  Memo at 22. Defendants respond that, absent a protective order, the information requested in this interrogatory is protected from disclosure by D.C. Code § 1-631.01.  Opp. at 10.  The Court notes that the parties' joint motion for a protective order was granted on December 4, 2007 – consequently, defendants shall respond to this interrogatory.

C.    **<u>Sanctions and Attorneys Fees and Costs</u>**

Lowe requests sanctions and attorneys fees and costs.  <u>Proposed Order</u>, attached to Motion.  Because the Motion will only be granted in part and because I cannot find, as required by Rule 37(a)(4)(A), that defendants' opposition was not substantially justified, an award of sanctions and attorneys fees and costs would not be appropriate under the circumstances.  Moreover, defendants' supplemental production was filed within the discovery period and thus was not the direct result of the Motion.  Therefore, Lowe's request will be denied.

III.    **<u>Conclusion</u>**

For the reasons stated above, the Motion will be granted in part and denied in part.  An Order accompanies this Memorandum Opinion.


Dated:  May 21, 2008                    _____/s/_____
                                        JOHN M. FACCIOLA
                                        UNITED STATES MAGISTRATE JUDGE